Deborah **CASNE,** Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (STAT COURIERS, INC., and State Workers' Insurance Fund),** Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 26, 2008.

Decided Dec. 4, 2008.

Charles C. Bell, Pittsburgh, for petitioner.

Robert S. Richman, Pittsburgh, for respondent.

BEFORE: LEADBETTER, President Judge, FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY President Judge LEADBETTER.

Claimant, Deborah Casne, petitions for review of the Workers' Compensation Appeal Board's (Board) order affirming the order of the Workers' Compensation Judge (WCJ) terminating benefits. She challenges the WCJ's determination that she fully recovered from her work-related injury. We affirm.

Claimant was employed as a delivery driver for respondent, STAT Couriers, Inc. (Employer). On January 12, 2005, Claimant was driving a vehicle for Employer when another vehicle rear-ended her vehicle, causing her to suffer a neck and upper back strain. Pursuant to a notice of compensation payable, Claimant received disability benefits of $308.49 per week.

Employer then required Claimant to undergo a physical examination. On February 14, 2006, Dr. Julius J. Huebner examined Claimant and ultimately concluded she had fully recovered from her work-related injury and could return to work. On June 26, 2006, Employer filed a termination petition, alleging as of February 14, 2006, Claimant had fully recovered from her work-related injury. Claimant filed an answer, denying she had fully recovered.

The WCJ reviewed testimony from Claimant, Dr. Huebner, and Dr. Milton J. Klein, who had treated Claimant. The WCJ was also presented with numerous medical documents related to Claimant's

injury. The WCJ found Claimant credible in part and not credible in part. Further, the WCJ found Dr. Huebner more credible than Dr. Klein. On June 26, 2007, the WCJ granted the termination petition, terminating Claimant's benefits effective February 14, 2006. Claimant appealed, arguing the WCJ's determination was not supported by substantial evidence, and that Dr. Huebner never examined her neck; thus, the WCJ erred as a matter of law in relying on his opinion. The Board affirmed. Claimant filed the instant petition for review, arguing that: (1) Dr. Huebner's testimony was insufficient to support the WCJ's conclusion that Claimant had fully recovered from her work-related injury; and (2) the Board erred in affirming the WCJ's finding discrediting Claimant's testimony in part.

In a termination petition, an employer has to prove the disability related to the compensable injury has ceased. *Lewis v. Workers' Comp. Appeal Bd. (Giles & Ransome, Inc.)*, 591 Pa. 490, 919 A.2d 922 (2007); *see also* Section 423 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 772. This must be shown by competent medical evidence. *Paul v. Workers' Comp. Appeal Bd. (Integrated Health Servs.)*, 950 A.2d 1101 (Pa.Cmwlth.2008), *appeal denied*, —— Pa. ——, 960 A.2d 842 (2008). Further, "in order to terminate benefits, an employer must address all of a claimant's injuries." *Paul*, 950 A.2d at 1104.

Although Claimant's first argument is couched in terms of whether there was substantial evidence to support the finding of full recovery, it is undisputed that Dr. Huebner opined that Claimant had fully recovered. This testimony was credited, and that certainly amounts to substantial evidence. Claimant argues,

however, that Dr. Huebner did not have an adequate basis for his opinion, *i.e.*, that it was incompetent, because, she asserts, Dr. Huebner did not examine her neck. A medical expert's opinion is not rendered incompetent unless it is solely based on inaccurate or false information. *Newcomer v. Workmen's Comp. Appeal Bd. (Ward Trucking Corp.)*, 547 Pa. 639, 692 A.2d 1062 (1997). The opinion of a medical expert must be viewed as a whole, and even inaccurate information will not render the opinion incompetent unless it is dependant on those inaccuracies. *Deitrich v. Workmen's Comp. Appeal Bd. (Shamokin Cycle Shop)*, 136 Pa.Cmwlth. 557, 584 A.2d 372 (1990). Whether an expert's opinion is incompetent is a question of law subject to our plenary review.

Here, Dr. Huebner examined Claimant and reviewed multiple reports, including those dealing with Claimant's spine and the steroid injections she received. Dr. Huebner's Report, February 14, 2006, Reproduced Record (R.R.) at 183a. He concluded that she did not need further treatment and could perform any work activities. *Id.* at 184a. In his deposition, Dr. Huebner stated that he performed a physical examination of Claimant, noting that she expressed subjective complaints of pain in the muscles to the side of her neck. Dr. Huebner's Deposition, R.R. at 198a. He also stated that he gently pressed on different muscle groups during the examination. *Id.* at 199a. Dr. Huebner did not recall performing a range of motion test on Claimant's neck because the majority of her complaints were in the trapezius area of her neck and had more of a character of muscle pain than spine pain. *Id.* at 215a. However, he palpated the trapezius area of her neck and her cervical[1] spine as part of his routine ex-

---

1. "Cervical" is defined as "[r]elating to a neck, or cervix, in any sense." Stedman's Medical Dictionary 324 (27th ed.2000).

amination. *Id.* He did not document the results of that part of the examination, other than describing diffuse tenderness on palpation. *Id.* He reviewed the police report from Claimant's 2005 accident, some of Dr. Klein's reports, and physical therapy reports, as well as x-rays, a CT scan, and an MRI of Claimant's cervical spine. *Id.* at 200–02a. He found "no sign of any injury to the spine itself, meaning the bones, ligaments, or disc material of the cervical spine." *Id.* at 209a.[2] He also found no objective evidence of ongoing neck strain, such as "muscle spasm, muscle atrophy, a deformity in terms of loss of the normal cervical lordosis," when he examined her. *Id.* at 221–22a.

Claimant's arguments go to the weight and credibility of the evidence and not to its competency. A reviewing court does not reweigh the evidence or review witness credibility; a reviewing court determines whether the WCJ's findings have the requisite measure of support in the record. *Lehigh County Vo–Tech Sch. v. Workmen's Comp. Appeal Bd. (Wolfe)*, 539 Pa. 322, 652 A.2d 797 (1995). The WCJ was free to accept Dr. Huebner's testimony that he did, in fact, examine her neck, and that based upon both his physical examination and his review of tests and records[3] he was able to render a medical judgment as to her recovery. Viewing Dr. Huebner's testimony in its entirety, it is simply not incompetent, and fully supports the WCJ's conclusion.

■ Next, Claimant challenges the WCJ's determination that she was, in significant part, not credible. Historically, credibility of witnesses has been viewed as the sole province of the fact-finder. However, Section 422(a) of the Act, *as amended*, 77 P.S. § 834, imposes a requirement that WCJs explain the rationale for their decisions and the reasons for rejecting or discrediting competent evidence. Specifically, that Section provides:

> Neither the board nor any of its members nor any workers compensation judge shall be bound by the common law or statutory rules of evidence in conducting any hearing or investigation, but all findings of fact shall be based upon sufficient competent evidence to justify same. All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers compensation judge shall specify the evidence upon which the workers compensation judge relies and state the reasons for accepting it in conformity with this sec-

---

**2.** Claimant asserts that Dr. Huebner agreed that an imaging scan would not show a strain. However, he testified that it was unusual for radiographic studies such as an MRI to be negative where there were soft tissue injuries, particularly to ligaments and tendons. Dr. Huebner's Deposition, R.R. at 210–11a.

**3.** We note that in *Coleman v. Workers' Comp. Appeal Bd. (Indiana Hospital)*, 577 Pa. 38, 842 A.2d 349 (2004), our Supreme Court held that a "physical examination" under Section 314(a) of the Act, 77 P.S. § 651(a), includes "all reasonable medical procedures and tests necessary to permit a provider to determine the extent of a claimant's disability." *Id.* at 46, 842 A.2d at 354. *Coleman* described this meaning of "physical examination" as a "broad definition." *Id.* Consequently, a "physical examination" under Section 314(a) may occur by using laboratory testing and imaging. *Id.* Further, "a claimant's prior medical records fall within the meaning of 'physical examination' for purposes of [Section 314(a)]." *Central Dauphin Sch. Dist. v. Workers' Comp. Appeal Bd. (Siler)*, 909 A.2d 465, 468 (Pa.Cmwlth.2006).

tion. When faced with conflicting evidence, the workers compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

Section 422 of the Act, 77 P.S. § 834.

In *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transport )*, 574 Pa. 61, 828 A.2d 1043 (2003), the Court discussed the applicability of the "reasoned decision requirement" to credibility determinations, stating:

[W]hen the issue involves the credibility of contradictory witnesses who have actually testified before the WCJ, it is appropriate for the judge to base his or her determination upon the demeanor of the witnesses. In such an instance, there often is not much to say, nor is there a need to say much, in order for a reviewing body to determine that the decision was reasoned. Such a credibility determination may involve nothing more than the fact-finder's on-the-spot, and oftentimes instinctive, determination that one witness is more credible than another. The basis for the conclusion that certain testimony has the "ring of truth," while other testimony does not, may be difficult or impossible to articulate-but that does not make such judgments invalid or unworthy of deference. . . . . Accordingly, in a case where the fact-finder has had the advantage of seeing the witnesses testify and assessing their demeanor, a mere conclusion as to which witness was deemed credible, in the absence of some special circum-

stance, could be sufficient to render the decision adequately "reasoned."

*Id.* at 77, 828 A.2d at 1052–53. Nonetheless:

absent the circumstance where a credibility assessment may be said to have been tied to the inherently subjective circumstance of witness demeanor, some articulation of the actual objective basis for the credibility determination must be offered for the decision to be a "reasoned" one which facilitates effective appellate review.

*Id.* at 78, 828 A.2d at 1053.

While many cases since *Daniels* have addressed the adequacy of the reasons set out by the WCJ in support of his or her credibility determination, we have not clearly addressed the *standard* by which we review such reasoning. While many petitioners challenging an adverse credibility determination would suggest that we review each and every component of the WCJ's reasoning for substantial evidence and reverse or remand if we can find any flaw, we do not believe the reasoned decision requirement takes us so far from the traditional notions of the deference owed credibility determinations. Indeed, the *Daniels* court cited with approval this court's opinion in *PEC Contracting Engineers v. Workers Comp. Appeal Bd. (Hutchison)*, 717 A.2d 1086 (Pa.Cmwlth. 1998), which stated:

The requirement that the WCJ adequately explain his reasons for accepting or rejecting evidence protects the parties to a decision by ensuring that a legally erroneous basis for a finding will not lie undiscovered. For instance, if a WCJ rejects evidence based on an erroneous conclusion that testimony is equivocal, or that the evidence is hearsay or for some other reason incompetent, such legal error will be evident and can be corrected on appeal.

However, the WCJ's prerogative to determine the credibility of witnesses and the weight to be accorded evidence has not been diminished by the amendments to Section 422(a). Such determinations are binding on appeal unless made arbitrarily and capriciously. *Ryan v. Workers Compensation Appeal Board (Community Health Services),* 550 Pa. 550, 707 A.2d 1130 (1998).

*PEC Contr. Engs.,* 717 A.2d at 1088–89. Finally, in addition to citing *PEC Contracting Engineers,* the *Daniels* court noted that: "[A] judge's expression of the basis for a decision may reveal distinct legal error, as in the misapprehension of a governing standard or a material fact." *Daniels,* 574 Pa. at 79 n. 8, 828 A.2d at 1054 n. 8.

■ We note that the arbitrary and capricious standard cited in *PEC Contracting Engineers* is not only the traditional standard applied to credibility determinations,[4] but is strikingly similar in substance to the prohibition in Section 422(a) of rejecting evidence for reasons that are irrational. These concepts provide an appropriate paradigm for our analysis. Credibility determinations are more than a series of individual findings. Rather, they represent the evaluation of a total package of testimony in the context of the record as a whole, and reflect subtle nuances of reasoning that may not be fully articulated, nor even fully appreciated, by the factfinder. Accordingly, we believe that, even where a WCJ has based a credibility determination on a cold record, substantial

deference is due. We must view the reasoning as a whole and overturn the credibility determination only if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational.[5]

With this standard in mind, we turn to the facts relevant here. The WCJ stated as follows:

> [Finding # 3] The claimant testified before me at two hearings held in this matter. Based upon my personal observation of the claimant's demeanor, as well as some contradictory evidence of record which will be discussed in more detail below, the claimant was found to be credible in part, and not credible in part.

> \* \* \* \*

> [Finding # 6] As already noted, I found the claimant to be credible in part, and not credible in part. I note that the claimant testified that although she did have a prior motor vehicle accident while driving the bus, her injuries at that time were limited to the right shoulder. She specifically denied ever having neck complaints prior to the motor vehicle accident on January 12, 2005. However, this is contradicted by her treating physician, Dr. Klein. His testimony establishes that as a result of that earlier incident, the claimant not only had right shoulder complaints, but also had cervical and dorsal complaints. In addition, I note that the claimant testi-

---

**4.** *See, e.g., Ryan,* 550 Pa. at 559, 707 A.2d at 1134; *Lehigh County Vo–Tech Sch.,* 539 Pa. at 328, 652 A.2d at 800.

**5.** A capricious disregard of evidence exists "when there is a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a

result." *Station Square Gaming L.P. v. Pa. Gaming Control Bd.,* 592 Pa. 664, 673, 927 A.2d 232, 237 (2007) [quoting *Arena v. Packaging Sys. Corp.,* 510 Pa. 34, 38, 507 A.2d 18, 20 (1986)]. The meaning of arbitrary includes "founded on prejudice or preference rather than on reason or fact." Black's Law Dictionary 112 (8th ed.2004).

fied that she stopped her treatment with Dr. Klein, based upon his recommendation that she then go see a sports specialist. However, again, this is contradicted by the testimony of Dr. Klein, who indicated that the reason that the patient-doctor relationship was severed at that time was due to her non-compliance of the medication management agreement between him and the claimant. For these reasons, I found large portions of the claimant's testimony to be not credible, particularly as to her subjective reporting of pain complaints. For that reason, her testimony concerning any ongoing complaints of pain not only in her cervical area, but any other part of her body allegedly related to the work injury is found to be not credible.

WCJ's Decision and Order, Findings of Fact 3 and 6 (June 26, 2007). Given our Supreme Court's statements in *Daniels* concerning credibility determinations based on demeanor, the first finding could well have ended the issue. Nonetheless, the WCJ further explained his reasons in Finding # 6, and those explanations have been challenged, so we will address them.

Claimant challenges the WCJ's reasoning with regard to her testimony about the injuries suffered in the earlier accident in 2002. She argues that "there is no medical evidence that the 2002 injury to [her] neck had any effect on her symptoms and restrictions suffered in the instant 2005 work-related collision." Claimant's Brief at 16. This is entirely beside the point. Whether or not the injuries suffered in 2002 affected her condition in 2005, her lack of candor about the nature of her 2002 injuries is *directly relevant to her credibility*. Claimant first argues that she never

explicitly stated why Dr. Klein stopped treating her, so she could not have contradicted Dr. Klein's testimony. Specifically, the testimony was:

Q Why did Dr. Klein stop treating you?

A He claimed that I had some . . .

    MR. COPETAS: Objection, hearsay.

    JUDGE HENRY: Sustained.

BY MR. BELL:

Q When you ceased treating with Dr. Klein, did he make any treatment recommendations to you?

A Yes, he told me to follow up with Dr. Doperak because she's in sports medicine.

Notes of Testimony, July 31, 2006, at 19; R.R. at 14a. Dr. Klein, on the other hand, testified that he ended Claimant's treatment because she was noncompliant with the medication management agreement; Claimant borrowed and used a prescription drug from her mother that Dr. Klein did not prescribe. Dr. Klein's Deposition, R.R. at 108–09a.

While Claimant is correct that she did not state directly that she stopped seeing Dr. Klein in order to see a sports medicine specialist, the WCJ is entitled to draw reasonable inferences from the testimony. Moreover, even if we were to find the WCJ's inference of a contradiction to be unreasonable, this would not justify overturning his credibility finding, in light of his overall reasoning and the fact that he observed the witness and her demeanor while testifying. In sum, the WCJ amply supported his credibility finding with a reasoned decision.

Accordingly, we affirm.[6]

---

6. Claimant also requested that this case be remanded to the WCJ to adjudicate her claim of an *unreasonable contest and an award of* litigation costs if we reversed the Board's decision. Since we affirm the Board's decision, we do not remand the matter to the WCJ.

## ORDER

AND NOW, this 4th day of December, 2008, the order of the Workers' Compensation Appeal Board in the above captioned matter is hereby AFFIRMED.