# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Alicia Robinson, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1569 C.D. 2017 |
| | : | Submitted: April 6, 2018 |
| Workers' Compensation Appeal | : | |
| Board (Madlyn and Leonard | : | |
| Abramson Center for Jewish Life), | : | |
| Respondent | : | |

BEFORE:  HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER**                       **FILED:  August 28, 2018**

Alicia Robinson (Claimant) petitions for review of the Order of the Workers' Compensation Appeal Board (Board) that affirmed the Decision of the Workers' Compensation Judge (WCJ) granting in part and denying in part her Claim Petition and denying her Penalty Petition.  Claimant argues on appeal that the WCJ did not issue a reasoned decision based on the substantial, competent evidence of record, as required by Section 422(a) of the Workers' Compensation Act[1] (Act), and that the WCJ should have awarded her unreasonable contest attorney fees.  After review, we affirm.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834.

# I.    Factual and Procedural Background

## A.    Petitions

On May 21, 2015, Claimant, while in the course and scope of her employment as a field nurse supervisor with Madlyn and Leonard Abramson Center for Jewish Life (Employer), was involved in a motor vehicle accident. Immediately following the accident, Claimant sought medical treatment with Employer's panel provider, Patient First Urgent Care, complaining of head, neck, and lower back pain. Employer issued a "medical only" Notice of Temporary Compensation Payable (NTCP) on June 5, 2015, describing the injury as "[c]ervical [s]prain." (Reproduced Record (R.R.) at 390a.) On July 8, 2015, Employer issued a Notice Stopping Temporary Compensation terminating the NTCP on the basis that Claimant did not suffer a work-related injury. Also, on July 8, 2015, Employer issued a Notice of Workers' Compensation Denial on the basis that Claimant did not suffer a work-related injury. On July 29, 2015, Claimant filed the Claim Petition, claiming a partial disability from May 21, 2015, to July 6, 2015, and an ongoing total disability beginning on July 7, 2015, due to injuries to the cervical and lumbar regions of her spine from the work-related car accident. Claimant also filed the Penalty Petition claiming that Employer violated the Act by refusing to pay indemnity and medical benefits, despite Employer lacking any reasonable basis for refusing to pay such benefits, and, therefore, Claimant was entitled to a 50 percent penalty.

## B.    Proceedings Before the WCJ

Claimant testified via deposition and before the WCJ as follows. The day after the accident, Claimant returned to Urgent Care because she "was still having a lot of pain." (Claimant's Deposition (Dep.) Notes of Testimony (N.T.) at 12,

November 20, 2015, R.R. at 14a.) Urgent Care referred Claimant to an orthopedic specialist, Dr. Richard Levenberg, with whom Claimant was still treating every two or three months at the time of her deposition. Urgent Care also gave Claimant a note indicating that she should not return to work, which she provided to Employer. However, on May 28, 2015, Claimant, at Employer's request, began working from home, which she did until about July 3, 2015, when Claimant's doctor, Dr. Venkatesh Sundararajan, determined that her injury prevented her from continuing to work.

As proof that Dr. Sundararajan had determined that Claimant should not continue working, Claimant forwarded to Employer, on July 7, 2015, a note electronically signed by him. (Claimant's Dep. N.T. at 19-20, R.R. at 21a-22a; Note, R.R. at 95a-96a.) The note indicated that Dr. Sundararajan had seen Claimant in his office on July 1, 2015, and that she "is not fit for their [sic] employment duties at this time." (Note, R.R. at 96a.) Dr. Sundararajan stated in the note that Claimant was scheduled for an "interventional pain procedure within [two] weeks." (*Id.*)

On cross-examination, Claimant indicated that she had been in three motor vehicle accidents in the past five years. She denied any prior neck or lower back injury. When asked if she was injured in any of the three prior motor vehicle accidents, Claimant responded, "I had -- **not this type of injury, no**." (Claimant's Dep. N.T. at 57, R.R. at 59a (emphasis added); WCJ Decision Finding of Fact (FOF) ¶ 6(g).) On redirect, Claimant explained that her injury from one of those prior accidents was "just . . . muscle soreness." (Claimant's Dep. N.T. at 72, R.R. at 74a.) Claimant testified that she underwent "electric stim" for "a soft tissue injury or something" but did "not remember everything," such as whether she underwent diagnostic testing. (Claimant's WCJ N.T. at 31, R.R. at 136a.)

At the time of Claimant's appearance before the WCJ, she was still receiving medical treatment for her injuries. Claimant had not returned to her time-of-injury job because of the pain in her neck, shoulders, back, and legs, which made lifting of "[p]retty much any kind of weight . . . a problem" and prevented her from sitting for long periods in a car. (*Id.* at 127a; FOF ¶ 10(d).) However, as of February 8, 2016, Claimant had begun working for Axiom Healthcare as a field nurse supervisor, which entailed working on a computer from home and did not require her to see patients as she had with Employer.

Claimant also offered the deposition testimony of Dr. Levenberg, a board-certified orthopedic surgeon. Dr. Levenberg first saw Claimant on June 1, 2015, who chiefly complained to him of pain in her neck that radiated into her arms and "pain in her back that radiated down her left leg." (Levenberg's Dep. at 12, R.R. at 156a-57a; FOF ¶ 7(b).) Dr. Levenberg conducted a physical exam, finding spasms in the cervical and lumbar regions of Claimant's spine and reduced ranges of motion with pain in both those regions. Dr. Levenberg diagnosed Claimant with "[c]ervical disc herniation, cervical radiculopathy, cervical sprain and strain, [and] cervical stenosis," all related to Claimant's May 21, 2015 work-related car accident. (R.R. at 160a; FOF ¶ 7(c).) Claimant had recovered from the cervical sprain and strain, Dr. Levenberg concluded, but the disc herniation, stenosis, and radiculopathy were all permanent.

Dr. Levenberg testified that his diagnosis of the cervical spine injury was confirmed by the three cervical spine MRI studies he reviewed. An April 2012 MRI showed "[m]ild to moderate spinal stenosis C5-C6 with left paracentral disc herniation." (R.R. at 161a; Record (R.) Item 16, Ex. 2.) A September 2014 MRI showed "[m]ulti-level degenerative changes including a left paracentral foraminal

4

disc herniation at C4-5." (R.R. at 161a.) A June 9, 2015 MRI showed, in addition to the herniations at C4-5 and C5-6, disc herniations at C2-3 and C3-4, along with a protrusion at C6-7.[2] Dr. Levenberg noted that these were new findings that had not been present in the 2012 and 2014 MRIs.

Dr. Levenberg referred Claimant to Dr. Joseph Lubek for a neurological examination, including EMG studies. According to a June 12, 2015 electromyography (EMG) and Dr. Lubek's consultation, Dr. Levenberg testified, Claimant had a "cervical sprain and strain" and "cervical radiculopathy." (R.R. at 164a-65a.) Dr. Levenberg stated that the car accident caused the cervical radiculopathy, specifically "an irritation of the nerve roots in the cervical spine." (*Id.* at 165a.) However, on cross-examination, Dr. Levenberg acknowledged that the 2015 EMG did not show any evidence of an acute cervical radiculopathy, and that Dr. Lubek's impression was only of a possible cervical radiculopathy. (*Id.* at 185a-86a, 189a.) Nevertheless, Dr. Levenberg believed the cervical radiculopathy was not possible but definite based on Claimant's subjective complaints of pain radiating into her arms, which correlated with the other objective findings, such as the 2015 MRI, "showing nerve root compression and herniated disc along with ongoing spasm[s] and limited range of motion." (R.R. at 190a.)

Regarding the lumbar spine, Dr. Levenberg diagnosed a disc protrusion at L4-5. Dr. Levenberg's diagnosis was based on a June 8, 2015 MRI, which showed a disc protrusion at L4-5. The disc protrusion along with arthritic changes in the thoracic and lumbar portions of Claimant's spine, shown on the June 8, 2015 MRI, caused "foraminal stenosis at L4-5[,] bilaterally left greater than right." (R.R. at

---

[2] Although not testified to by Dr. Levenberg, this MRI showed that the disc herniations at C2-3, C3-4, C4-5, and C5-6, were, respectively, 2 millimeters, 2 millimeters, 6.5 millimeters, and 4.5 millimeters.

168a.) Dr. Levenberg noted that a foramen means "hole" in Latin, (*id.*), and that this is where the nerve root exits the spine and travels down the leg. He stated the foraminal stenosis correlated with Claimant's complaints of pain radiating down her left leg. The disc protrusion, Dr. Levenberg opined, was related to the accident because there was no evidence of any complaints or injuries to Claimant's lumbar spine prior to the car accident. Further, Dr. Levenberg stated, the accident would have aggravated the preexisting injuries, such as the disc degeneration and foraminal narrowing, so as to irritate the nerve root and cause further foraminal narrowing.

Dr. Levenberg concluded that: Claimant would require permanent work restrictions and would be unable to return to her pre-injury job; Claimant would no longer be able to lift the human body, as required by Employer, and would be restricted to working in a sedentary position; and Claimant had reached maximum medical improvement in both the cervical and lumbar regions of her spine. Therefore, Dr. Levenberg's recommendation was that she continue with pain management using quarterly injections and medication but surgery was not indicated.

On cross-examination, Dr. Levenberg acknowledged that Claimant had not told him about being in a car accident in 2012, although he learned about it at some point. (*Id.* at 180a-81a; FOF ¶ 7(i).) He also acknowledged that in the medical records of Drs. Lubek and Sundararajan, there was no mention of Claimant having been in a prior car accident. (R.R. at 181a-82a.)

Employer presented the deposition testimony of Dr. Menachem Meller, a board-certified orthopedic surgeon who conducted an independent medical examination (IME) of Claimant on January 12, 2016. In preparation for the IME, Dr. Meller reviewed Claimant's medical records, including the June 2015 MRIs of

6

Claimant's cervical and lumbar spine. Dr. Meller testified that the injuries identified in those MRIs were degenerative and not the result of trauma, such as a car accident. When Dr. Meller took Claimant's history from her, she indicated she had been in a car accident in 2012, but that it caused only muscle soreness. She denied any prior injury to her neck or back or having had a prior MRI. Based on the records Dr. Meller reviewed, the history Claimant provided, and his physical examination of her, he concluded that, as a result of the work accident, Claimant sustained a whiplash injury, such as a mild sprain and strain to the cervical and lumbar regions of her spine. Further, Dr. Meller concluded, Claimant had fully recovered from the work-related whiplash injury, could return to her time-of-injury position with Employer, and did not require any additional medical treatment for the work-related injury. Dr. Meller explained that multiple medical providers near the time of the work accident had diagnosed Claimant with a sprain and strain, she was released to light-duty work the day after the accident, and she had multiple previous injuries and identical diagnostic studies before this accident. Dr. Meller noted that fibromyalgia, with which Claimant was previously diagnosed, would support his conclusion, because Claimant could have pain without any injury. On cross-examination, Dr. Meller acknowledged that his opinion that Claimant had fully recovered from her injuries was limited to the day of the IME.

Employer also presented the deposition testimony of Ailee Strausser, who was the human resources manager at the time of Claimant's work accident. Strausser's position required her to manage all of Employer's benefit programs including workers' compensation. On May 27, 2015, Strausser emailed Claimant a recall to work letter indicating that Employer had a light-duty position available that allowed her to work from home. Claimant agreed to work from home. Included with the

7

paperwork Strausser e-mailed Claimant was a notice of workers' compensation rights and duties and medical release form, but Claimant declined to sign those forms. (R.R. at 315a-17a; FOF ¶ 9(e).) On July 2, 2015, Strausser learned from Claimant's supervisor that Claimant had been taken out of work completely. Strausser left voicemail and e-mail messages for Claimant requesting a note from her doctor. On July 7, 2015, Claimant responded in an e-mail that, according to Strausser, "she did not get anything in writing from the doctor, just that he agrees with the pain management doctor and will see her again in four months." (R.R. at 319a; FOF ¶ 9(f).) The following day, Strausser received a fax from Claimant's attorney containing the note from Dr. Sundararajan. (R.R. at 319a; FOF ¶ 9(g).) Strausser testified that Dr. Sundararajan did not explain in the note why Claimant was unable to perform sedentary work from home as she had been doing up until that point. (*Id.*) Strausser also testified that, at that point, Employer still did not know Claimant's actual physical limitations. Employer's workers' compensation insurer notified Strausser that it was going to deny Claimant's claim effective July 8, 2015. Employer provided Claimant, as a courtesy, a six-week leave of absence.

## C. The WCJ's Decision

The WCJ granted the Claim Petition in part, ordering Employer to pay Claimant's medical expenses for reasonable and necessary treatment related to the car accident for the period between May 21, 2015, and January 11, 2016. (WCJ Order.) The WCJ ordered Claimant's medical benefits terminated as of January 12, 2016. (*Id.*) The WCJ otherwise denied and dismissed the Claim Petition. (*Id.*) The WCJ also denied and dismissed the Penalty Petition. (*Id.*)

In reaching that resolution, the WCJ largely discredited Claimant's testimony. The WCJ credited Claimant's testimony that she was in a car accident on May 21, 2015, and sustained "mild cervical and lumbar sprains/strains." (FOF ¶ 11.) However, the WCJ found Claimant's testimony that she sustained a more severe injury not credible. (*Id.*) The WCJ explained that his credibility determination was based on Claimant's "demeanor and comportment" when she testified before him. (*Id.* ¶ 11(b).) In addition, the WCJ continued, "Claimant was disingenuous on multiple occasions regarding her history of prior neck and back injuries and symptoms." (*Id.* ¶ 11(c).) The WCJ highlighted that Claimant's medical records detailed that Claimant was in two car accidents in April 2012, which left her "complain[ing] of severe headaches, neck pain, low back pain[,] and radiating pain in her left arm." (*Id; see also* Medical Record of Robert Sing, D.O., R.R. at 294a.) Both the 2012 and 2014 MRIs, the WCJ noted, showed that Claimant had neck pain and bilateral radiculopathy. (FOF ¶ 11(c).) Thus, Claimant had the same symptoms now as she had less than a year before the work accident, the WCJ stated. (*Id.*) Her claim to the contrary was "clearly false." (*Id.*) In addition, the WCJ stated, it seemed "highly unlikely" and "not credible" for Claimant to be unable to recall the details of her prior car accidents, as she testified at one point. (*Id.*) The WCJ found that Claimant did not give an accurate history to Drs. Levenberg and Meller and her other treating physicians. (*Id.*) "It [wa]s not plausible" for Claimant to claim that she was unable to remember her history especially given that she is a registered nurse, the WCJ concluded. (*Id.*) The WCJ stated that "[t]he only conclusion" he could "draw [wa]s that [Claimant] intentionally attempted to mislead people regarding her history. This lack of veracity taints her entire testimony." (*Id.*)

Addressing the issue of Claimant's disability, the WCJ found it "curious." (*Id.* ¶ 11(d).) The WCJ noted that Claimant worked "light duty" from home for about six weeks, up until July 7, 2015, and she did not claim that she lost any wages during this time period. (*Id.*) Instead, Claimant sought full wages beginning on July 8, 2015, but any evidence as to why she stopped working was "oddly lacking." (*Id.*) The WCJ highlighted that Claimant did not specify in her testimony any difficulty she had working from home, such as that she was physically unable to do so, only that Dr. Sundararajan took her out of work. (*Id.*) But, the WCJ found, Dr. Sundararajan taking Claimant out of work was worth "very little evidentiary weight." (*Id.*) Dr. Sundararajan only stated that she was "not fit for their [sic] employment duties." (*Id.*) He did not explain why Claimant was unfit to work from home, he did not indicate that he was aware that Claimant was working light duty from home, and he did not testify. (*Id.*) In addition, given that the note from Dr. Sundararajan was electronically signed, the WCJ "wonder[ed] whether it was actually authored by, or reviewed by, the doctor, as opposed to one of his office staff." (*Id.*)

Similarly, the testimony of Dr. Levenberg did not address why Claimant was unable to continue working from home. (*Id.* ¶ 11(e).) Dr. Levenberg, the WCJ noted, saw Claimant the day before Dr. Sundararajan wrote the note excusing her from work, but Dr. Levenberg did not recite in his testimony what Claimant's complaints were or what his examination that day entailed. (*Id.*) Dr. Levenberg also did not testify as to Claimant's ability to continue working from home. (*Id.*) In fact, the WCJ continued, there was no evidence that Dr. Levenberg knew Claimant had been working from home for six weeks.

Based on the foregoing, the WCJ discredited Dr. Levenberg's testimony. The WCJ found Dr. Levenberg not credible on the nature of Claimant's injury because he did not "specify" the level of cervical radiculopathy or cervical disc herniation that Claimant suffered. (*Id.* ¶ 12(b).) The evidence clearly showed, the WCJ concluded, that the more significant injuries were to C4-5 and C5-6 of Claimant's spine, but those injuries were preexisting. (*Id.*) While, the WCJ noted, Dr. Levenberg stated, at counsel's prompting, that there were herniations at C2-3 and C3-4 that did not appear on the pre-accident MRIs, Dr. Levenberg did not state that the car accident caused those injuries, nor that they "were the source of the purported radiculopathy." (*Id.*) Dr. Levenberg, the WCJ stated, also misrepresented the opinion of Dr. Lubek, testifying that Dr. Lubek found that Claimant had cervical radiculopathy. (*Id.* ¶ 12(c), citing R.R. at 164a.) However, in fact, the EMG Dr. Lubek conducted showed "no evidence of acute cervical radiculopathy." (*Id.* (emphasis omitted).) Dr. Levenberg never explained how the EMG could be negative for cervical radiculopathy if there was one ongoing. (*Id.*)

In contrast to Dr. Levenberg's testimony, the WCJ found Dr. Meller's testimony that Claimant's injuries preexisted the work accident "plausible and credible." (FOF ¶ 12(d).) Dr. Meller's testimony on that point was credible, the WCJ found, because it was consistent with Claimant's history of prior injuries and complaints. (*Id.*) In addition, Dr. Meller's testimony that new herniations in C2-3 and C3-4 of Claimant's spine were not clinically significant was "logical and credible" because it was consistent with the EMG finding of no cervical radiculopathy and the MRI report describing those "discs as small, central, and without foraminal encroachment." (*Id.* ¶ 12(e).)

Given the foregoing, the WCJ concluded that Claimant suffered mild cervical and lumbar sprains/strains as a result of the work-related accident, that those injuries did not disable her for more than seven consecutive days as she started working from home just seven days after the accident, and that Claimant failed to prove that she was unable to continue working from home. (*Id.* ¶ 14(a), (c).) As of January 12, 2016, Claimant had fully recovered from her work injuries. (*Id.* ¶ 14(d).)

Regarding the reasonableness of Employer's contest, although Employer denied the claim based on no work-related injury having occurred when Employer should have denied it based on there being no disability, Employer's contest, the WCJ concluded, was still reasonable. (*Id.* ¶ 14(h).) In doing so, the WCJ highlighted that: Claimant did not provide Employer with a reason, either from herself or a medical professional, why she was unable to continue working from home; Claimant refused to sign a notice of workers' compensation rights and duties and medical release form; Dr. Levenberg did not testify that Claimant was unable to work from home; and Dr. Meller testified that Claimant had suffered only mild strains/sprains. (*Id.*) While, the WCJ concluded, Employer should have denied the claim based on no disability, "the extent of this litigation, and the results, would have been the same." (*Id.*)

### D.    Claimant's Appeal to the Board

Claimant then appealed to the Board, arguing that the WCJ did not issue a reasoned decision. The Board rejected Claimant's argument and affirmed the WCJ's Decision. The Board concluded that the credible evidence of record, including the WCJ's rejection of Claimant's testimony based on her demeanor, which the Board could not overturn, supported the WCJ's Decision that Claimant suffered only mild

12

cervical and lumbar sprains/strains.  While Claimant argued that the WCJ should have granted her at least a limited period of disability benefits because the WCJ granted her a limited period of medical benefits, the WCJ concluded that Claimant did not carry her burden of establishing a disability.  The WCJ's conclusion was supported by the WCJ's rejection of Claimant's testimony, Dr. Levenberg's expert opinion, and Dr. Sundararajan's note, as not credible.  Finally, the Board concluded, the WCJ did not err in finding that Employer's contest was reasonable.  Claimant did not provide Employer with a medical report indicating why she could not continue working from home, and "there was a real dispute as to the nature and extent of Claimant's injuries and disability." (Board Opinion at 10.)  Given this, the Board concluded, the WCJ did not err in concluding that Employer's contest was reasonable.

## II.    Discussion

### A.    Reasoned Decision/Substantial Evidence

On appeal,[3] Claimant argues that the Board erred in affirming the WCJ's Decision because the WCJ did not issue a reasoned decision based on the substantial, competent evidence of record.  Claimant offers the following reasons in support of her argument.  The WCJ erred in discrediting Claimant because she did not sign a workers' compensation rights and duties form and general medical release form as Employer requested.  The Act does not require a claimant to sign such forms and, thus, Claimant's failure to sign such forms cannot form a basis for discrediting her.

---

[3] Our standard of review is limited to determining whether the WCJ's findings of fact are supported by substantial evidence, whether the WCJ committed an error of law, or whether Claimant's constitutional rights were violated. *Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap)*, 81 A.3d 830, 838 (Pa. 2013).

13

It was unreasoned for the WCJ to discredit Claimant based on the WCJ's mischaracterization of her testimony. Claimant asserts that she testified that she had been in prior car accidents and that she suffered injuries as a result of those accidents, but that her current injuries from the work-related car accident were more severe and of longer duration. Claimant contends the WCJ's Decision is unreasoned because he found that Claimant did not challenge Strausser's testimony. However, there was no basis for Claimant to challenge her testimony and, in fact, Strausser's testimony corroborated Claimant's testimony, both of which established notice, disability, need for medical treatment and restrictions. The WCJ's Decision is not reasoned because the WCJ discredited Dr. Sundararajan's note based on it containing a stamped signature and lacking a specific reason for removing Claimant from work. However, Claimant argues, there is no requirement under the law that a treating physician must use his original signature. Further, the information contained in the note was sufficient to establish that Claimant was disabled as a result of the car accident, and Employer never requested additional information. Claimant asserts the WCJ's Decision is unreasoned because the WCJ found that Claimant was entitled to a limited period of medical benefits, but not disability benefits for that same limited period. A reasoned decision would have included an award for both benefits because all of Claimant's treating physicians agreed that she was disabled due to the work accident, and the only physician that did not agree, Dr. Meller, did not examine Claimant until January 12, 2016. As such, Claimant argues, she was disabled from the date of the accident, on May 21, 2015, until at least January 12, 2016.

Claimant contends the WCJ's determinations on the credibility of Drs. Levenberg and Meller are unreasoned. The WCJ mischaracterized Dr. Levenberg's testimony and rendered inaccurate findings on it. Dr. Levenberg, Claimant asserts,

14

credibly concluded that, as a result of the work accident, Claimant's preexisting injuries were aggravated and she sustained a cervical radiculopathy, disc herniations, and stenosis, which conclusion Dr. Levenberg reached after reviewing various diagnostic studies and his physical examination of Claimant. In contrast, Claimant argues, Dr. Meller's opinions were equivocal and contradictory. In support, Claimant claims that Dr. Meller testified that none of Claimant's cervical injuries were related to the work accident, but, if there was an aggravation of a preexisting injury, it was temporary and self-limiting. Dr. Meller, Claimant continues, testified that there was no objective worsening of the degenerative injuries to Claimant's spine, but Dr. Meller never explained what he meant by objective worsening. Dr. Meller contradicted himself in testifying about whether the car accident caused Claimant's diabetes and hypertension. Claimant argues that Dr. Meller tried to attribute Claimant's injuries to fibromyalgia, but Claimant was not being treated for fibromyalgia, had not been diagnosed with it, and no medical provider attributed it to the car accident. Based on the foregoing, Claimant asserts that the Board's Opinion affirming the WCJ's Decision should be reversed, and her Claim and Penalty Petitions granted in their entirety.

Employer responds that substantial evidence demonstrates that the WCJ issued a reasoned decision, and that his credibility determinations were neither arbitrary nor capricious. Therefore, Employer argues, this Court should affirm the Board's Order partially denying the Claim Petition and entirely denying the Penalty Petition. We agree.

Section 422(a) of the Act sets forth the "reasoned decision" requirement as follows:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon

15

the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. § 834. Our Supreme Court has explained

a decision is "reasoned" for purposes of Section 422(a) if it allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate court under applicable review standards . . . . [T]he Act requires that, in rendering a reasoned decision in a case with conflicting evidence, the WCJ "must adequately explain the reasons for rejecting or discrediting competent evidence." . . . The point is that, absent the circumstance where a credibility assessment may be said to have been tied to the inherently subjective circumstance of witness demeanor, some articulation of the actual objective basis for the credibility determination must be offered for the decision to be a "reasoned" one which facilitates effective appellate review.

*Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052-53 (Pa. 2003) (citing 77 P.S. § 834). Since *Daniels*, we have emphasized that the reasoned decision requirement does not require us to "review each and every component of the WCJ's reasoning for substantial evidence and reverse and remand if we can find any flaw[.]" *Casne v. Workers' Comp. Appeal Bd. (Stat Couriers, Inc.)*, 962 A.2d 14, 18 (Pa. Cmwlth. 2008). The WCJ need only "make the findings necessary to resolve the issues raised by the evidence and relevant to the decision." *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 194

16

n.4 (Pa. Cmwlth. 2006). "It is sufficient that the decision contains findings of fact and conclusions of law, based upon all of the evidence, which clearly and concisely state and explain the rationale for the WCJ's decision." *CPV Mfg., Inc. v. Workers' Comp. Appeal Bd. (McGovern)*, 805 A.2d 653, 657 (Pa. Cmwlth. 2002).

Here, the WCJ did just that. The rationale for the WCJ's Decision was that Claimant did not carry her burden of proving that she sustained a disability, that is, a loss of earnings or earning power, as a result of the work-related accident. The WCJ's rationale was based on his credibility determinations, which, contrary to Claimant's contention, are supported by objective bases.

The WCJ discredited Claimant's testimony based on his observation of her demeanor when she appeared before him and testified that she did "not remember everything," including whether she underwent diagnostic testing following her car accidents in 2012. (R.R. at 136a.) The WCJ's observation of Claimant's demeanor "alone is sufficient to satisfy the reasoned decision requirement." *Amandeo v. Workers' Comp. Appeal Bd. (Conagra Foods)*, 37 A.3d 72, 77 (Pa. Cmwlth. 2012) (citing *Daniels*, 828 A.2d at 1052-53). Nevertheless, the WCJ also provided objective bases for discrediting Claimant, such as the contradiction between Claimant's testimony that she did not previously sustain this type of injury and her 2012 and 2014 MRIs that indicated to the contrary, her failure to provide an accurate history of her car accidents and prior injuries to Drs. Levenberg, Meller, Lubek, and Sundararajan, and her failure to testify why, after working six weeks in the light-duty position, she could no longer do so. *See Daniels*, 828 A.2d at 1053 (noting that objective factors for discrediting a witness include inconsistencies or contradictions in testimony).

17

Similarly, the WCJ provided objective bases for discrediting Dr. Levenberg and crediting Dr. Meller. Specifically, Claimant did not provide Dr. Levenberg with an accurate medical history, Dr. Levenberg did not quantify the extent of Claimant's injuries, and he misrepresented Dr. Lubek's findings in the EMG. In contrast, the WCJ credited Dr. Meller because his diagnosis was consistent with Claimant's long-standing complaints prior to the work injury and with the diagnostic testing. These objective bases for discrediting Dr. Levenberg and crediting Dr. Meller facilitate effective appellate review and, therefore, the WCJ's Decision is a reasoned one. *Daniels*, 828 A.2d at 1053.

The fact that Claimant has invoked Section 422(a) does not give us license to "second-guess the WCJ's reasons for credibility determinations." *Dorsey*, 893 A.2d at 195. It remains within "the WCJ's prerogative to determine the credibility of witnesses and the weight to be accorded evidence." *Casne*, 962 A.2d at 19 (citation omitted). We will not disturb the WCJ's credibility determinations unless, when the WCJ's reasoning is considered as a whole, those determinations are "arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational." *Id.* Thus, we do not "review each and every component of the WCJ's reasoning for substantial evidence and reverse or remand if we can find any flaw." *Id.* at 18.

However, this is what Claimant asks us to do with her myriad of challenges to the WCJ's credibility findings. Claimant argues that we should overturn the WCJ's determination discrediting her testimony that she sustained a disabling injury, claiming that the WCJ discredited her based on: 1) her not having signed a workers' compensation rights and duties form and general medical release form; and 2) a mischaracterization of her testimony as to the extent of her injuries from the prior

car accidents. However, the WCJ's credibility determination went well beyond these points, finding that Claimant had "intentionally attempted to mislead" the doctors who examined her about her prior injuries. (FOF ¶ 11(c)); *see Casne*, 962 A.2d at 19 ("Credibility determinations are more than a series of individual findings.").) Moreover, Claimant mischaracterizes the WCJ's findings. The WCJ did not find, as Claimant argues, that she was not credible because she refused to sign these forms. (FOF ¶ 14(h).) Nor did the WCJ find that Claimant testified that she had never been injured in a car accident prior to the work-related accident. (Claimant's Brief (Br.) at 33-34.) The WCJ found that Claimant testified "that she never previously had the **types** of symptoms she now complains of." (FOF ¶ 11(c) (emphasis added).) Substantial evidence,[4] including the medical record authored by Dr. Sing recounting Claimant's complaints of neck and back pain following an April 2012 car accident, supports the WCJ's finding that Claimant was inaccurate in this regard. (R.R. at 294a.) In summary, considering the WCJ's reasoning as a whole, as we must, his determination discrediting Claimant's testimony that she sustained a disabling injury is neither arbitrary nor capricious. Claimant never explained, as it was her burden to do, why, after working six weeks in a light-duty position that paid her the same as her time-of-injury job, she could no longer work the light-duty position. *Sch. Dist. of Phila. v. Workers' Comp. Appeal Bd. (Lanier)*, 727 A.2d 1171, 1172 (Pa. Cmwlth. 1999) (stating that in a claim petition the claimant bears the burden of proving, *inter alia*, that she suffered a work-related injury that caused a disability, which is a loss of earnings or earning power).

---

[4] "Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods., Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

Next, as to Claimant's challenge to the WCJ's findings regarding Strausser's testimony, the fact that Strausser's testimony was, as the WCJ found and neither party disagrees, "largely undisputed" does not render the WCJ's Decision denying her claim for disability benefits unreasoned. (FOF ¶ 13.) Claimant overstates the significance of Strausser's testimony, claiming that it established disability. (Claimant's Br. at 27.) On the critical issue of disability, however, Strausser testified that Claimant sent her a copy of Dr. Sundararajan's note, but that Dr. Sundararajan did not explain in the note why Claimant was unable to perform the light-duty position as she had been doing up until that point. Thus, contrary to Claimant's contention, the fact that Strausser's testimony was largely undisputed does not lead to the conclusion that Claimant sustained her burden of proof, and the WCJ did not render an unreasoned decision in this regard.

Nor was the WCJ's Decision unreasoned because the WCJ rejected Dr. Sundararajan's note. Claimant's contention that she presented legally sufficient evidence, because the note was electronically signed and stated that Claimant was being taken out of work, presupposes that the evidence itself was persuasive. The WCJ examined Dr. Sundararajan's note, saw that it was electronically signed, contained a grammatical error and only a conclusory statement without any explanation why Claimant could no longer work from home after having done so for six weeks. The WCJ could reasonably conclude that Dr. Sundararajan may not have authored the note or even seen it. Further, as the WCJ noted, Dr. Sundararajan never testified so as to confirm that the note contained his medical opinion. While Claimant argues that Employer did not present any evidence contradicting Dr. Sundararajan's note, it was not unreasoned for the WCJ still to give the note "very little evidentiary weight" (FOF ¶ 11(d)), for a WCJ is free to reject even

20

uncontradicted evidence. *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods., Inc.)*, 721 A.2d 1152, 1156 (Pa. Cmwlth. 1998).

The WCJ also did not render an unreasoned decision because he discredited Dr. Levenberg and credited Dr. Meller on the issue of disability. As we have set forth, the WCJ discredited Dr. Levenberg because Claimant did not provide Dr. Levenberg with an accurate medical history, neglecting to tell him about her prior car accidents. (R.R. at 180a-81a). Dr. Levenberg did not quantify the extent of Claimant's injuries (*Id.* at 160a), even though the June 9, 2015 MRI showed that some of the herniations were "small." (R. Item 16, Ex. 4.) Dr. Levenberg did not accurately represent Dr. Lubek's findings in the EMG, stating that the EMG and consultation showed a "cervical radiculopathy" (R.R. at 164a-65a), when, in fact, Dr. Lubek stated that there was "**no evidence** of acute cervical radiculopathy," as Dr. Levenberg acknowledged during cross-examination (*Id.* at 185a-86a, 189a; June 12, 2015 EMG, R. Item 16, Ex. 6.) (emphasis added). All of these findings, as exhibited by our citations to the record, are supported by substantial evidence, and the WCJ discrediting Dr. Levenberg based on these findings is neither arbitrary nor capricious. *See Daniels*, 828 A.2d at 1053 (noting that erroneous factual assumptions and impeachment with inconsistencies or contradictions are valid bases for discrediting a witness). In contrast, the WCJ credited Dr. Meller because his diagnosis was consistent with Claimant's long-standing complaints prior to the work injury of neck and back pain, as Dr. Sing noted back in April 2012 (R.R. at 294a), and with the diagnostic testing, particularly MRIs from 2012 and 2014 showing disc herniations at C4-5 and C5-6. (R. Item 16, Ex. 2, 3.) These findings are also supported by substantial evidence, as demonstrated by our citations to the record, and crediting Dr. Meller based on these findings is neither arbitrary nor capricious.

21

(R.R. at 219a-20a, 235a.) While Claimant contends that the WCJ's crediting of Dr. Meller was unreasoned because he tried to attribute her injuries to fibromyalgia, when she was never treated for fibromyalgia, had not been diagnosed with it, and no medical provider attributed fibromyalgia to her work accident, Claimant's contention is based on mischaracterizations of the testimony. Claimant herself testified that she was diagnosed with fibromyalgia in 2003. (R.R. at 62a-63a.) Dr. Meller never attributed Claimant's fibromyalgia to her work accident. (R.R. at 253a.) Rather, Dr. Meller explained that Claimant's fibromyalgia would support his diagnosis because, in his opinion, Claimant was continuing to complain of pain in her neck and back when "underlying findings to explain . . . [those] complaints" were lacking. (R.R. at 291a.)

Finally, Claimant argues that the WCJ's Decision is unreasoned because the WCJ found that Claimant was entitled to a limited period of medical benefits, but not disability benefits for that same limited period. However, since the WCJ discredited the evidence Claimant presented to show she sustained a disability, but credited her evidence that showed she sustained a work-related injury that caused her to incur medical expenses, it was rational for the WCJ to award Claimant medical expenses up until her work-related injury was resolved, on January 12, 2016, and not to award her any disability benefits. The Act itself contemplates that a work-related injury may occur that results in work-related medical expenses without causing a loss in earnings or earning power. Section 306(f.1)(1) of the Act, *as amended*, 77 P.S. § 531(1). Indeed, Claimant did not suffer a loss in earnings when she returned to work in the light-duty position seven days after her work accident, and she never persuasively explained why she could not continue to work in that position, as she had been doing for six weeks, when she stopped working. Thus,

because Claimant sustained a work-related injury that required medical treatment without suffering a loss of earnings or earning power, that is, a disability, "the denial of disability benefits [wa]s not inconsistent with [the] award for medical expenses incurred for treatment of [the] work-related injury." *Odd Fellow's Home of Pa. v. Workmen's Comp. Appeal Bd. (Cook)*, 601 A.2d 465, 471 (Pa. Cmwlth. 1991).

Therefore, because the WCJ provided objective bases for his credibility determinations, and the WCJ's credibility determinations are supported by substantial evidence and are neither arbitrary nor capricious, the WCJ rendered a reasoned decision.

### B.     Unreasoned Decision Based on Bias

Claimant also argues that the WCJ rendered an unreasoned decision because he "interjected himself into the case as an advocate" rather than acting as a neutral arbiter of credibility. (Claimant's Br. at 49.) In support, Claimant points to the WCJ's rejection of Dr. Sundararajan's note on the bases that it contained a stamped signature and lacked a specific reason for removing Claimant from work, which bases the WCJ raised *sua sponte* and without any evidence to contradict Dr. Sundararajan's note. In fact, Claimant asserts, Employer relied on Dr. Sundararajan's note.[5]

An unreasoned decision includes one that is "founded on prejudice or preference rather than on reason or fact." *Casne*, 962 A.2d at 19 n.5 (quoting Black's Law Dictionary 112 (8th ed. 2004)). However, an adverse ruling, without more, does not demonstrate bias, especially when that ruling is legally proper. *Cellucci v.*

---

[5] Employer does not specifically respond to Claimant's contention that the WCJ was biased, but Employer has argued that the WCJ's rejection of Dr. Sundararajan's note was rational.

*Laurel Homeowners Ass'n*, 142 A.3d 1032, 1045 (Pa. Cmwlth. 2016); *Slappo v. J's Dev. Assocs., Inc.*, 791 A.2d 409, 416 (Pa. Super. 2002).

As we have discussed, the WCJ provided rational reasons for rejecting Dr. Sundararajan's note, which substantial evidence supports. The fact the WCJ questioned, *sua sponte*, whether Dr. Sundararajan had written or even seen the note, for the reasons the WCJ outlined, did not evidence bias. Rather, the WCJ was free to reject even uncontradicted evidence as not credible. *Serrano v. Workers' Comp. Appeal Bd. (Chain Bike Corp.)*, 718 A.2d 885, 889 (Pa. Cmwlth. 1998). Therefore, Claimant has failed to establish that the WCJ's Decision was unreasoned because it was infected by bias.

### C. Reasonable Contest

Claimant argues that the WCJ erred in finding that Employer engaged in a reasonable contest. Claimant asserts that at the time Employer issued the Notice of Worker's Compensation Denial terminating the NTCP, Employer did not have any evidence to contradict Claimant's proof that she was in a work-related accident that resulted in her injuries and disability.

Employer responds that its contest was reasonable because there was a disputed issue as to whether Claimant was disabled. Employer notes that Claimant did not explain why she could no longer work in the light-duty position and refused to sign a medical authorization so that Employer could investigate the claim. As such, Employer contends, it had a reasonable basis for the contest.

Section 440(a) of the Act, 77 P.S. § 996(a),[6] authorizes an award of attorney fees to a claimant who prevails in whole or in part. Section 440(a) provides, in relevant part, as follows:

> In any contested case where the insurer has contested liability in whole or in part, . . . the employe . . . **, in whose favor the matter at issue has been finally determined in whole or in part** shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings: **Provided, That cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer.**

77 P.S. § 996(a) (emphasis added). "Whether an employer had a reasonable basis for contesting a claimant's award of benefits depends upon both the facts and the legal issues involved in each case." *The Pa. State Univ. v. Workers' Comp. Appeal Bd. (Sox)*, 83 A.3d 1081, 1089 (Pa. Cmwlth. 2013). An employer's contest is reasonable if it was prompted "to resolve a genuinely disputed issue" and not merely to harass the claimant. *Id.* (citation omitted). "The employer bears the burden of proving the reasonableness of its contest"; however, the employer, in order to meet its burden, need not prove that its evidence is legally sufficient, only that the evidence is conflicting or subject to contrary inferences. *Id.*

Here, Claimant did not prevail on the issue of whether she sustained a disability as a result of the work accident and, thus, cannot recover for litigation costs associated therewith. *Jones v. Workers' Comp. Appeal Bd. (Steris Corp.)*, 874 A.2d 717, 721-22 (Pa. Cmwlth. 2005) ("a claimant must prevail on the contested issue in order to be awarded litigation costs."). While Claimant did prevail on whether she

---

[6] Added by the Act of February 8, 1972, P.L. 25, *as amended*.

25

sustained a work-related injury, which entitled her to medical benefits for a closed period, the WCJ concluded that "the extent of this litigation . . . would have been the same," pointing to, *inter alia*, the following facts in support: Employer did not receive a medical report indicating why Claimant was unable to continue working in the light-duty position; Claimant herself did not explain why she could not continue to work in the light-duty position; and Claimant refused to sign a medical release form; (FOF ¶ 14(h).) In other words, the WCJ concluded that the attorney fees Claimant incurred were the result of litigating the issue of disability, and Claimant has not shown otherwise either before the Board or now on appeal to this Court. Since Claimant has not shown that she incurred any attorney fees from contesting the issue of whether she sustained a work-related injury, she is not entitled to an award of unreasonable contest attorney fees. *Church v. Workers' Comp. Appeal Bd. (Cook)*, 135 A.3d 1153, 1163 (Pa. Cmwlth. 2016) (stating that "where a claimant is only partially successful, before costs are awarded, a determination must be made as to whether the costs were incurred on the winning issue or the losing issue," and there, although the claimant prevailed on the termination petition, the litigation expenses related to the reinstatement petition, on which claimant did not prevail). Therefore, the WCJ did not err in denying Claimant's request for unreasonable contest attorney fees.

## III. Conclusion

For the foregoing reasons, we conclude that the WCJ issued a reasoned decision based on substantial, competent evidence of record, and did not err when he denied Claimant's request for unreasonable contest attorney fees. Accordingly, we affirm the Board's Order.

_____
**RENÉE COHN JUBELIRER**, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alicia Robinson,                                    :
                   Petitioner            :
                                 :
               v.                      :   No. 1569 C.D. 2017
                                 :
Workers' Compensation Appeal          :
Board (Madlyn and Leonard              :
Abramson Center for Jewish Life),      :
                Respondent             :

## O R D E R

**NOW**, August 28, 2018, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is hereby **AFFIRMED**.

 

_____
**RENÉE COHN JUBELIRER,** Judge