# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Raymour & Flanigan, : 
            Petitioner : 
             : 
         v. : No. 639 C.D. 2018
             : Submitted: March 1, 2019
Workers' Compensation Appeal : 
Board (Houston), : 
            Respondent : 

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE ROBERT SIMPSON, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                **FILED: July 1, 2019**

Raymour & Flanigan (Employer) petitions for review of the Order of the Workers' Compensation Appeal Board (Board) affirming the decision of a Workers' Compensation Judge (WCJ) that, in relevant part, denied Employer's Petition to Terminate the Compensation Benefits (Termination Petition) of Tracy Houston (Claimant) based on her full recovery.[1] In doing so, the WCJ credited the testimony of Gary Muller, M.D., Claimant's medical expert, that Claimant's May 2012 work injury significantly contributed to Claimant's May 15, 2013 total right knee

---

[1] The WCJ also granted one of two Petitions to Suspend Claimant's benefits based on Employer offering Claimant a job, suspended Claimant's benefits as of February 1, 2014, the effective date of the job offer, and dismissed the other petition as moot. In addition, the WCJ granted the Petition to Reinstate Claimant's benefits as of May 15, 2013, the date Claimant underwent a total right knee replacement. Claimant and Employer appealed these determinations to the Board, which affirmed. The Board's decisions on these issues have not been appealed and are not before this Court now.

replacement surgery and that Claimant had not fully recovered from her work injury, and rejected the contrary testimony of John P. Nolan, Jr., M.D., Employer's medical expert. On appeal, Employer argues that Dr. Muller's testimony that Claimant's work injury aggravated her preexisting condition is not legally competent and his remaining competent testimony does not constitute substantial evidence that supports the WCJ's decision.

## I. Background

### A. *Claimant's Injury and the Claim Petition Proceedings*

Claimant worked for Employer in various positions, most recently as a furniture salesperson. On May 3, 2012, Claimant fell as she was getting up from a chair at work, tearing the skin on her left knee and twisting her right knee. Claimant has preexisting degenerative disease (arthritis) in both of her knees, and she has a preexisting condition, Osgood-Schlatter disease, that required surgery on her right knee approximately 13 years prior to her being injured at work. Claimant filed a Claim Petition, relying on the opinions of Dr. Muller, who performed arthroscopic surgery on her right knee in November 2012. While the Claim Petition was pending, Claimant underwent a total right knee replacement on May 15, 2013, performed by Stanley Michael, M.D., to whom Dr. Muller had referred Claimant.

On October 23, 2013, the WCJ granted the Claim Petition, finding that Claimant sustained a work injury in the nature of "a tear of the medial meniscus of the right knee superimposed on preexisting degenerative disease." (WCJ Decision, May 26, 2015, Finding of Fact (FOF) ¶ 2.) The WCJ awarded Claimant total disability benefits as of November 16, 2012, the date Dr. Muller performed arthroscopic surgery to repair the torn meniscus in Claimant's right knee. Employer appealed to the Board. In a November 12, 2014 opinion, the Board affirmed most

2

of the WCJ's decision, but changed the description of Claimant's work injury to "a tear of the medial meniscus of the right knee" and suspended Claimant's benefits as of February 8, 2013, the date Claimant had a non-work-related surgery to the left knee. (FOF ¶ 4.)

Claimant petitioned this Court to review the Board's decision on December 11, 2014. Upon review, this Court reversed and reinstated the WCJ's initial decision. Relevant to the current matter, we explained that

> Employer and the Board are correct that Dr. Muller did not opine that the meniscus tear or workplace accident aggravated Claimant's degenerative disease and that a finding that Claimant's degenerative disease was aggravated by the workplace accident would not be supported by substantial evidence. The WCJ, however, did not describe Claimant's work injury as including aggravation of Claimant's preexisting degenerative disease, and the description of Claimant's work injury as "a tear of the medial meniscus of the right knee superimposed on preexisting degenerative disease" does not make Employer responsible for disability or medical treatment merely because it was caused by or related to Claimant's preexisting degenerative disease. Rather, the WCJ's description of Claimant's injury only encompasses disability and conditions caused by the meniscus tear or the interaction of that tear or its treatment with Claimant's preexisting degenerative disease.

*Houston v. Workers' Comp. Appeal Bd. (Raymour & Flanigan)* (Pa. Cmwlth., No. 2249 C.D. 2014, filed July 22, 2015) (*Houston I*), slip op. at 12-13. We also reversed the suspension of Claimant's benefits as of February 8, 2013, concluding there was no evidence that the disability related to Claimant's right knee injury ceased as of that date. *Id.* at 11-12.

3

*B. The Current Termination Petition*

1. The WCJ's May 26, 2015 Decision

While the appeals from the Claim Petition were being litigated, Employer filed the Termination Petition on January 14, 2014, alleging that Claimant had fully recovered as of December 27, 2013, the date of Dr. Nolan's independent medical examination (IME). Claimant filed an answer denying the Termination Petition's material allegations. The WCJ held multiple hearings, at which Employer offered a deposition of Claimant, as well as the deposition testimony and reports of Dr. Nolan. Claimant testified and presented the deposition testimony of Dr. Muller. The WCJ summarized that evidence as follows.

Dr. Nolan, a board-certified orthopedic surgeon, testified that he performed an IME of Claimant on December 27, 2013, during which he obtained from Claimant her medical history, including the history related to her May 2012 injury and treatment thereof. (FOF ¶ 6b.) His physical examination of Claimant revealed no objective medical abnormalities related to the adjudicated work injury, the right medial meniscus tear. Dr. Nolan also reviewed Claimant's medical records, including the operative reports from Dr. Muller's November 2012 arthroscopic surgery and Dr. Michael's May 2013 total right knee replacement surgery. Based on his examination of Claimant and his review of her medical records, Dr. Nolan opined that Claimant had fully recovered from the right medial meniscus tear, explaining

> Well, she clearly is recovered from the meniscal tear because the meniscus is now out. She's had a knee replacement. Really what it comes down to is, you know, is there a reason to attribute the need for a total knee replacement to her meniscus tear. I don't believe there is.

4

(*Id*. ¶ 6e; Reproduced Record (R.R.) at 88a.) Dr. Nolan further explained that a total knee replacement surgery would not be used to treat a meniscus tear, but would be used to treat the clearly documented preexisting advanced arthritis in Claimant's right knee. (R.R. at 88a-89a, 96a.) Dr. Nolan released Claimant to her pre-injury position as a salesperson without restrictions.

Claimant testified live and via deposition in the Claim Petition and current proceedings. In her May 2013 deposition, Claimant testified that she hoped to be able to return to work, but did not feel fully recovered at that time. Testifying before the WCJ in April 2014, Claimant explained that she underwent a surgery to her left knee in February 2013, had the total right knee replacement on May 15, 2013, and did not feel sufficiently recovered to return to work. Finally, in her November 2014 deposition, Claimant stated she remained out of work, continued to be treated by Dr. Muller and another physician, who was managing her pain medications, and continued to receive physical therapy for her right knee. Claimant did not feel she was able to return to her pre-injury position, as she needed to "sit and recline in a chair for most of the day." (FOF ¶ 9c.) Claimant acknowledged that, in 2011, she sought treatment from the Rothman Institute for bilateral knee pain.

Claimant presented Dr. Muller's September 4, 2014 deposition testimony, and the WCJ also considered Dr. Muller's prior deposition testimony of December 7, 2012, which had been attached as an exhibit to the later deposition. Dr. Muller, a board-certified orthopedic surgeon, first examined Claimant in August 2012 and obtained a history from Claimant of the May 2012 work injury and her initial treatment for that injury. After examining Claimant and reviewing MRIs of Claimant's knees taken in June 2012, which revealed a meniscal tear and arthritis in Claimant's right knee, Dr. Muller "performed a partial medial meniscectomy" on

5

Claimant's right knee on November 16, 2012. (*Id.* ¶ 12d.) In December 2012, Dr. Muller opined Claimant had not fully recovered from her medial meniscus tear and surgery because the recovery time is between 8 to 10 weeks. (*Id.* ¶ 12d, 12e.) At that time, Dr. Muller restricted Claimant to standing only for eight hours a day; he was not going to restrict Claimant to sedentary work. However, since December 2012, Dr. Muller observed that Claimant developed increasing pain in her right knee that "did not respond to conservative treatment." (*Id.* ¶ 12i.) Dr. Muller opined that "Claimant's work injury significantly contributed to her total right knee replacement on May 15, 2013, primarily due to the removal of her meniscus and the mechanism of the injury." (*Id.* ¶ 12j.) On the issue of Claimant's full recovery, Dr. Muller indicated that a patient never fully recovers from a knee replacement and, therefore, Claimant was not fully recovered. (R.R. at 166a.) According to Dr. Muller, Claimant "could do . . . sedentary, sit down, limited ambulation type of work, but not retail where you would have to stand all day." (FOF ¶ 12k.)

The WCJ credited Claimant's testimony that her condition worsened and she was disabled from May 15, 2013, through February 1, 2014, but rejected her testimony that she could not return to her salesperson position in January 2014 because of her work-related right knee injury. (*Id.* ¶ 14.) The WCJ found Dr. Muller to be credible and persuasive, except for his testimony regarding her inability to return to her pre-injury position in January 2014. According to the WCJ, Dr. Muller regularly treated Claimant and was well positioned to monitor the progression of Claimant's medical conditions, and his testimony was "closely reasoned, logical, sequential, and supported by substantial and competent evidence." (*Id.* ¶ 16.) To the extent Dr. Nolan's opinions conflicted with Dr. Muller's, the WCJ rejected them, noting that Dr. Nolan performed only one evaluation of Claimant.

Based on the credited evidence, including the operative reports, the diagnostic studies, and the mechanism of Claimant's injury, the WCJ found that Claimant was not fully recovered from her May 2012 work injury. (*Id.* ¶ 17.) According to the WCJ, "Claimant demonstrated a causal connection between the total right knee replacement and her original May 3, 2012 work injury and meniscal surgery on November 16, 2012." (*Id.* ¶ 18.) For these reasons, the WCJ found that Employer had not met its burden of proving, as required for the termination of benefits, that Claimant's disability had ceased or that her current disability was not related to her work injury. Therefore, the WCJ denied the Termination Petition.

2. The Board's April 22, 2016 Opinion

Employer appealed to the Board,[2] arguing that Dr. Muller changed his "testimony in this matter to characterize Claimant's injury as an 'aggravation' of her underlying condition," which he was precluded from doing because this Court's decision in *Houston I* held there was no evidence of an aggravation injury. (Board Op., Apr. 22, 2016, at 11.) Employer asserted that, in doing so, Dr. Muller's testimony was rendered legally incompetent. Thus, Employer contended, the WCJ erred in denying the Termination Petition based on that legally incompetent expert medical evidence. The Board agreed in part, observing that "it appear[ed] to [the Board] that Dr. Muller testified . . . that Claimant's fall would have 'aggravated' existing arthritis under Claimant's knee cap and hastened the need for a knee replacement" and that such "testimony **potentially** enlarged Claimant's injury description in spite of the Commonwealth Court's admonition that 'a finding that Claimant's degenerative disease was aggravated by the workplace accident would

---

[2] As discussed in note 1 *supra*, Claimant also appealed, but her appeal is not relevant to the issues currently before the Court.

not be supported by substantial evidence.'" (*Id.* at 12 (quoting *Houston I*, slip op. at 12) (emphasis in original).) Observing that it is the WCJ's function to make clear findings of fact to resolve the issues raised and that the WCJ here "did not provide a description of injury in his most recent Decision," the Board was "unsure whether [the WCJ] interpreted [Dr. Muller's] testimony to include an aggravation of [Claimant's] pre[]existing injury," and, absent such finding, it was "unable to evaluate [Employer's] assertions on Appeal." (*Id.* at 13.) Accordingly, the Board remanded the matter to the WCJ to clarify his findings.

3. The WCJ's January 27, 2017 Remand Decision

On remand, the WCJ clarified his findings, noting this Court's decision in *Houston I*. The WCJ found:

> 8. After close review of the record and four years of protracted litigation on the issue, this Judge reaffirms the original description of the Claimant's work injury as stated in this Judge's October 23, 2013 Decision, to wit: "a tear of the medial meniscus of the right knee superimposed on preexisting degenerative disease." As recognized by the Commonwealth Court, this Judge did not (and will not) include an "aggravation" to the Claimant's underlying degenerative condition as a component of the work injury.

> 9. To the extent the opinions of the Claimant's medical expert, Dr. Muller, may suggest an "aggravation" to the Claimant's underlying degenerative condition may have occurred as a result of the original . . . work injury, those opinions are rejected. In all other respects, the opinions of Dr. Muller are credible and persuasive. Specifically, this Judge accepts Dr. Muller's opinion the **Claimant has not fully recovered from the original work injury** based upon the totality of Dr. Muller's otherwise credible testimony. When in conflict with the testimony of Dr. Muller, the testimony of Dr. Nolan is rejected by this Judge.

(WCJ Decision, Jan. 27, 2017, Findings of Fact (Remand FOF) ¶¶ 8-9 (emphasis added).) Accordingly, the WCJ concluded, again, that Employer did not meet its burden of proof on the Termination Petition.

### 4. The Board's April 11, 2018 Remand Opinion

Employer again appealed to the Board, arguing now that when the portions of Dr. Muller's testimony related to an aggravation of Claimant's preexisting condition were not considered, there was nothing left of Dr. Muller's testimony to support his opinion that Claimant was not fully recovered. Therefore, Employer contended, the WCJ capriciously rejected Dr. Nolan's opinion that Claimant was fully recovered. The Board disagreed, citing Dr. Muller's testimony that Claimant's work injury significantly contributed to her need for a total knee replacement and that no one ever recovers fully from a knee replacement. Thus, the Board held that

> [a] full and fair reading of [Dr. Muller's] testimony corroborate[d] the WCJ's findings, leaving a description of injury which does not include an aggravation of Claimant's pre[]existing condition and is consistent with the Commonwealth Court's characterization of the WCJ's description, i.e., "the WCJ's description of Claimant's injury only encompasses disability and conditions caused by the meniscus tear or the interaction of that tear or its treatment with Claimant's pre[]existing degenerative disease."

(Board Op., Apr. 11, 2018 (Remand Op.), at 13-14 (quoting *Houston I*, slip op. at 12-13).) Accordingly, the Board affirmed. Employer now petitions this Court for review.

## II.    Employer's Appeal

### A. *The Parties' Arguments*

On appeal,[3] Employer argues the WCJ erred in finding that Claimant was not fully recovered from her May 3, 2012 injury based on the acceptance of Dr. Muller's testimony over the "uncontroverted and unassailable" opinion of Dr. Nolan. (Employer's Brief (Br.) at 17.)  According to Employer, although the WCJ rejected Dr. Muller's testimony to the extent it suggested that the work incident aggravated Claimant's preexisting degenerative conditions, the WCJ's decision to accept "the totality of Dr. Muller's otherwise credible testimony" and reject Dr. Nolan's opinions, was legal error. (*Id.*)  Employer contends that other than his aggravation testimony, Dr. Muller did not provide any other explanation for linking the May 2012 injury to the May 15, 2013 total right knee replacement surgery, a fact the Board did not grasp when it affirmed.  Thus, Employer argues, there is not substantial evidence to support the WCJ's decision, and the WCJ's rejection of Dr. Nolan's testimony, the only competent medical opinion evidence in the record, was arbitrary and capricious.  As the WCJ's findings are not supported by substantial, competent evidence, Employer maintains this Court should reverse the WCJ's decision. (*Id.* at 19 (citing *Greenwich Collieries v. Workmen's Comp. Appeal Bd. (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995)).)

Claimant responds that the WCJ's decision to deny the Termination Petition because Claimant is not fully recovered from her work injury is supported by

---

[3] This Court's "review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law[,] or whether necessary findings of fact are supported by substantial evidence." *City of Philadelphia v. Workers' Comp. Appeal Bd. (Sherlock)*, 934 A.2d 156, 159 n.5 (Pa. Cmwlth. 2007).  "Substantial evidence is such relevant evidence a reasonable mind might accept as adequate to support a conclusion." *WAWA v. Workers' Comp. Appeal Bd. (Seltzer)*, 951 A.2d 405, 407 n.4 (Pa. Cmwlth. 2008).

10

substantial evidence. According to Claimant, Employer's arguments were rejected by the Board and should be rejected by this Court as well. Here, Claimant maintains, the WCJ reviewed all of Dr. Muller's testimony that was not related to an alleged aggravation, and, based on that testimony, found that Claimant's work injury ultimately required her to have a total right knee replacement from which she had not fully recovered. When the WCJ's reasoning and Dr. Muller's testimony is examined as a whole, Claimant argues, the WCJ's acceptance of Dr. Muller's testimony and rejection of Dr. Nolan's testimony was not arbitrary, capricious, "fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational" such that this Court could overturn the WCJ's credibility determination. (Claimant's Br. at 15 (citing *Casne v. Workers' Comp. Appeal Bd. (STAT Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008)).) Claimant contends Employer is improperly seeking to have this Court reweigh the WCJ's credibility determinations, which this Court cannot do.

*B. Discussion*

To prevail on a termination petition, "an employer bears the burden of proving by substantial evidence that a claimant's disability has ceased, or any remaining conditions are unrelated to the work injury." *Baumann v. Workers' Comp. Appeal Bd. (Kellogg Co.)*, 147 A.3d 1283, 1289 (Pa. Cmwlth. 2016) (emphasis omitted) (quoting *Westmoreland Cty. v. Workers' Comp. Appeal Bd. (Fuller)*, 942 A.2d 213, 217 (Pa. Cmwlth. 2008)). Disability is presumed to continue until proven otherwise, and, therefore, the employer's burden is substantial. *Id.* To meet that burden, the employer must present unequivocal, competent medical evidence that acknowledges the adjudicated or accepted work injury and establishes that the claimant is fully recovered from that injury. *Hall v. Workers' Comp. Appeal Bd. (Am. Serv. Grp.)*, 3

11

A.3d 734, 740 (Pa. Cmwlth. 2010). In determining whether a medical expert is competent, the opinions of the "medical expert must be viewed as a whole, and even inaccurate information will not render the opinion incompetent unless [the opinion] is depend[e]nt on those inaccuracies." *Casne*, 962 A.2d at 16. In a termination proceeding, if an expert does not acknowledge the accepted or adjudicated injury, that expert's testimony is not competent. *Sarmiento-Hernandez v. Workers' Comp. Appeal Bd. (Ace Am. Insur. Co.)*, 179 A.3d 105, 110-11 (Pa. Cmwlth. 2018); *Hall*, 3 A.3d at 740, 742. The competency of an expert's opinion "is a question of law subject to our plenary review." *Casne*, 962 A.2d at 16.

While the competency of an expert's opinion is a question of law, questions of credibility and evidentiary weight are within the complete authority of the WCJ, who is the ultimate fact-finder in workers' compensation proceedings. *Hall*, 3 A.3d at 739 n.7. "Credibility determinations are more than a series of individual findings," they "represent the evaluation of a total package of testimony in the context of the record as a whole, and reflect subtle nuances of reasoning that may not be fully articulated, nor even fully appreciated, by the fact-finder." *Casne*, 962 A.2d at 19. In reviewing credibility determinations, the Court "must view the [WCJ's] reasoning as a whole and overturn the credibility determination only if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational." *Id.* "A capricious disregard of evidence exists when there is a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result." *Id.* at 19 n.5 (internal quotation marks and citation omitted). "The meaning of arbitrary includes founded on

prejudice or preference rather than on reason or fact." *Id.* (internal quotation marks and citation omitted).

There can be no dispute that had the WCJ credited Dr. Nolan's testimony, Employer would have satisfied its burden of proof on its Termination Petition. Dr. Nolan testified that Claimant had fully recovered from her right medial meniscus tear, and that the right knee replacement surgery was not related to that tear but to Claimant's preexisting degenerative disease. The WCJ did not, however, credit that testimony, choosing instead to credit that part of Dr. Muller's testimony that was not asserting an aggravation injury. The WCJ found that, through Claimant's credited testimony, Claimant established that her May 2012 work incident significantly contributed to her May 15, 2013 total right knee replacement and she had not fully recovered from her **original** work injury. (Remand FOF ¶ 9.) Employer argues that, after the WCJ rejected Dr. Muller's aggravation testimony, Dr. Muller's remaining testimony does not support the WCJ's findings and rejection of Dr. Nolan's testimony. Thus, we are required to review Dr. Muller's testimony and determine whether, as a whole, that testimony supports the WCJ's decision.

Dr. Muller testified by deposition twice: in 2012 in support of the Claim Petition, and again in 2014 in opposition to the Termination Petition. In his 2012 deposition, Dr. Muller opined that Claimant's MRI of her right knee revealed a new, work-related injury of a "tear of the menisci" and preexisting "advanced arthritic changes and . . . post-surgical changes." (R.R. at 210a, 215a.) Dr. Muller explained Claimant was a surgical candidate for arthroscopic surgery for the work-related torn medial meniscus, not her preexisting degenerative issues, and he performed that surgery in November 2012 to treat Claimant's work-related injury. (*Id.* at 214a-15a, 219a-20a.) Dr. Muller explained the possibility that Claimant's preexisting

13

conditions could impact her recovery from the medial meniscus tear, stating those conditions "may . . . impact [Claimant's] rehab a little bit, . . . so it may take her a bit longer to recover . . . ." (*Id.* at 249a.) As described in *Houston I*, Dr. Muller's opinion did not include that the meniscus tear or the May 2012 work incident aggravated Claimant's degenerative disease. Slip op. at 12. Thus, we concluded that while a finding that an aggravation occurred would not be supported by the record, the WCJ did not find that Claimant's work injury included an aggravation of Claimant's preexisting condition. *Id.* Instead, this Court stated, "the WCJ's description of Claimant's injury only encompasses disability and conditions caused by the meniscus tear or the interaction of that tear or its treatment with Claimant's preexisting degenerative disease." *Id.* at 12-13. With Dr. Muller's 2012 testimony and *Houston I*'s description of Claimant's injury in mind, we turn to Dr. Muller's 2014 deposition testimony.

Initially, we note that Dr. Muller's 2014 deposition was taken prior to this Court's decision in *Houston I*, as that matter was still pending before this Court. Picking up from his prior deposition testimony, which was taken a few weeks after Claimant's arthroscopic surgery to her right knee, Dr. Muller explained that since December 2012, Claimant "developed increasing pain and symptoms" in her right knee "that didn't really respond to conservative treatment." (R.R. at 160a.) Dr. Muller testified that, after trying different types of injections, Claimant "continued to be symptomatic, and because of [Claimant's] increasing pain, [Dr. Muller] referred [Claimant] to a colleague to do a total knee replacement." (*Id.*) When asked by Claimant's counsel whether he had "an opinion as to whether or not [Claimant's] work injury in May of 2012 significantly contributed to the need for th[e] total knee replacement," Dr. Muller responded

14

At this time, yes, because of a couple of reasons. One is that she was basically asymptomatic and hadn't really sought any treatment prior to the injury. When I scoped her, I took away some of her meniscus, which is **going to give her some progression of the arthritic changes** in her knee **because now she's lost some of her cushion**. So therefore, you get **some progression just naturally over time** related to that part of the procedure.

Then, **the mechanism of the injury** where she fell directly and went down on her knee directly, even though when I scoped her, she had a fair amount of arthritic changes underneath her knee cap. There is no real way for me to say, and anybody that scoped her, if that had changed dramatically from the injury, but the mechanism would be that, obviously, if you fall directly on your knee and she had an abrasion documented when she was seen by the WorkHealth people and everything, that this **would aggravate that arthritic change underneath the kneecap** and also **hasten the need for knee replacement** at some point.

(R.R. at 164a-65a (emphasis added).) Employer objected to this testimony on the basis that Claimant's adjudicated work injury did not include an aggravation of her preexisting degenerative conditions. (*Id.* at 159a, 165a.) Then the following exchange occurred between Claimant's counsel and Dr. Muller:

Q      The **fall gives [Claimant] a meniscus tear**; is that correct?

A      **Correct**.

Q      The **meniscus tear leaves her with less cushioning** in her knee after surgery, correct?

A      **Correct**.

Q      That will **hasten the arthritis**?

A      In the inner side of her knee, **yes**.

Q      Okay. That will **hasten the knee for a total knee replacement**?

A      Over time, **yes**.

15

Q    Do I have the sequence of those events correct?

A    Pretty much, yes.

Q    Ok.  Doctor, you have continued to treat her right knee since the total knee replacement; am I correct?

A    Correct.

Q    At any point in time, have you found her right knee to be fully recovered?

A    Well, patients who get total knees never fully recover.  It's an artificial knee.  Most of the people that we do knee replacements in are not people that are at the age or usually employable.  So they are usually older patients, like 60 and older, and that was another reason why I referred [Claimant] to Dr. Michael because when you do these knee replacements in younger patients, eventually they need to be revised because the current life of a knee replacement is somewhere between 15 and 20 years.

     So eventually, these patients need another revision at some point.  So these people usually are not able to, you know -- we don't want them standing all day, we don't want them kneeling on their knee, there's a lot of things that we don't have people do that have total knee replacement.  So I would say, no, she is not recovered enough that she could do a job where she would have to stand and be ambulatory all day long for like eight or nine hours.

. . . .

Q    . . . Doctor, at any point in time, **have you found her to be fully recovered of a tear of the medial meniscus of the right knee superimposed on pre[]existing degenerative disease**?

A    **No**.  I mean, **because now, she has a knee replacement, so, I mean, that whole issue is gone now because they removed all of that**, but, no.

Q    Okay. **What is the diagnosis for her knee as it stands today**?

A    Well, I mean, she has **a knee replacement**, she's done relatively well, her range of motion is pretty good, I mean, you know, hopefully it will last 15 to 20 years.

16

Q	Okay. Doctor, last time around, **you testified that she aggravated her pre[]existing condition**. You recall that testimony; am I correct?

[Employer's Counsel]	Objection to collateral estoppel.

Q	Do you recall that testimony, Doctor?

A	**Yes**.

Q	At any point in time while she's been under your care, **do you feel as though she is recovered from an aggravation of a pre[]existing condition in the right knee**?

A	Well, the condition that she had, **the chondromalacia and all of that, it is resolved now because its [sic] been removed by knee replacement**. So, in a way, yes, she has.

Q	Okay. You can't have chondromalacia --

A	Yes, **when you have a knee replacement, it doesn't exist anymore**.

Q	Okay. Doctor, do you anticipate this woman being able to return to retail work ever?

A	No. I mean, she could do, you know, sedentary, sit down, limited ambulation type of work, but not retail where you would have to stand all day.

(*Id.* at 166a-69a (emphasis added).) On cross-examination, Dr. Muller acknowledged that the preoperative and postoperative diagnoses for Claimant's right knee replacement surgery was "[r]ight knee degenerative joint disease status post-McKay osteotomy." (*Id.* at 172a.) The WCJ rejected any of Dr. Muller's testimony related to the work injury aggravating Claimant's preexisting degenerative disease. (Remand FOF ¶ 9.)

17

"Aggravate" is defined as "to make worse . . . or more severe" and "aggravation" is "an increasing in seriousness or severity . . . an act or circumstance that intensifies or makes worse." Webster's Third New World Dictionary 41 (2002). Dr. Muller did testify that Claimant's May 2012 work injury, the right medial meniscus tear superimposed on preexisting degenerative condition, significantly contributed to the need for the total right knee replacement. However, a review of the testimony Dr. Muller gave to support that conclusion reveals his opinion was predicated on the meniscus tear and associated surgery causing "progression" in Claimant's preexisting degenerative disease, which "hasten[ed]" Claimant's arthritis and Claimant's need for the right knee replacement surgery. (R.R. at 164a-66a.) Such testimony relies on a worsening, i.e., **aggravation**, of Claimant's preexisting degenerative disease by her work injury and its treatment to establish that the total right knee replacement was causally related to Claimant's adjudicated work injury, which is not consistent with *Houston I*. Because the WCJ **rejected** all of Dr. Muller's **testimony related to the aggravation** of Claimant's preexisting degenerative disease, all of Dr. Muller's explanations in support of his opinion that Claimant was not fully recovered were **not credible**. Other than these explanations, and his testimony that the mechanism of Claimant's injury aggravated Claimant's preexisting degenerative condition, Dr. Muller provided no other causal link between the adjudicated work injury and Claimant's total right knee replacement surgery.

We acknowledge our statement in *Houston I*, which the Board cited in affirming the WCJ's determination here, (Remand Op. at 14), that "the WCJ's description of Claimant's injury only **encompasses disability and conditions caused by** the meniscus tear **or the interaction of that tear or its treatment with**

18

**Claimant's preexisting degenerative disease**." *Houston I*, slip op. at 12-13 (emphasis added). However, that statement was based upon Dr. Muller's 2012 deposition testimony, which opined that Claimant's recovery from her meniscus tear and surgery could be slowed by her preexisting degenerative disease. (R.R. at 169a.) As we observed in *Houston I*, because there was no evidence to support an aggravation injury, the description of Claimant's work injury does not encompass disability and conditions caused by the work injury's worsening of Claimant's preexisting degenerative disease. Slip op. at 12.

For these reasons, even reviewing Dr. Muller's testimony as a whole, we disagree with Claimant that what remains of the credited testimony constitutes substantial evidence that supports the WCJ's decision that "Claimant has not fully recovered from the **original** work injury." (Remand FOF ¶ 9 (emphasis added).) It is unlikely that "a reasonable mind might accept" Dr. Muller's testimony, absent his aggravation opinions, "as adequate to support [the] conclusion," *WAWA v. Workers' Comp. Appeal Bd. (Seltzer)*, 951 A.2d 405, 407 n.4 (Pa. Cmwlth. 2008), that Claimant's "tear of [her] medial meniscus of the right knee superimposed on preexisting degenerative disease," (FOF ¶ 2; Remand FOF ¶ 8), significantly contributed to Claimant's total right knee replacement from which she has not fully recovered. Thus, regardless of whether Dr. Muller's testimony was legally competent, his credited testimony does not constitute substantial evidence to support the WCJ's decision that Claimant is not fully recovered from her original May 2012 work injury.[4]

---

[4] Claimant did not and does not now argue, and the WCJ did not find, the existence of a consequential injury in this matter. *See Pizza Hut, Inc. v. Workers' Comp. Appeal Bd. (Mahalick)*, 11 A.3d 1067, 1070 (Pa. Cmwlth. 2011) (stating that a work injury can include consequential injuries, which are injuries that occur as a result of the work injury after the injury is accepted or

Our analysis does not end here, however, because the WCJ rejected Employer's evidence of full recovery based on Dr. Muller's opinions that the total right knee replacement surgery was related to Claimant's original work injury and that she was not fully recovered therefrom. While "the WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted," *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1156 (Pa. Cmwlth. 1998), the basis of the WCJ's decision cannot be "fundamentally dependent on a misapprehension of material facts," *Casne*, 962 A.2d at 19, which we believe the WCJ's determination was here.

Ordinarily, we would remand for the WCJ to reassess his credibility determination without considering the challenged testimony of Dr. Muller. But, a remand is not necessary here because, after reviewing the record it is apparent that both Dr. Nolan and Dr. Muller testified that Claimant's right medial meniscus, the tear of and surgery for which were the basis of Claimant's May 2012 work injury, has **been removed** as a part of the total knee replacement. Notwithstanding his opinion that Claimant had not fully recovered from the adjudicated work injury, Dr. Muller testified that the "whole" medial meniscus "issue is gone now because they removed all of that" as a part of the knee replacement. (R.R. at 168a.) Dr. Nolan explained "she clearly is recovered from the meniscal tear because the meniscus is now out." (*Id.* at 88a.) In addition, Dr. Muller stated that Claimant's "pre[]existing degenerative disease" upon which Claimant's meniscus tear was superimposed, had also "resolved . . . because it's been removed by [the] knee replacement" and

---

adjudicated); *Moltzen v. Workmen's Comp. Appeal Bd. (Rochester Manor)*, 646 A.2d 748, 750 (Pa. Cmwlth. 1994) (recognizing that a new or additional injury caused by the medical treatment of a work-related injury, that new or additional injury is compensable). Instead, they rely upon the description of the original work injury, as reflected by the WCJ's remand findings of fact 8 and 9, and Dr. Muller's testimony that Claimant is not recovered from that original injury.

20

"doesn't exist anymore." (*Id.* at 168a-69a.) And, Dr. Nolan testified that the total right knee replacement was performed to resolve Claimant's preexisting degenerative disease. (*Id.* at 89a, 95a-96a.) As the two components of Claimant's adjudicated work injury have been removed per the testimony of **both** Dr. Muller and Dr. Nolan, and Dr. Muller's testimony does not support the finding that Claimant's total right knee replacement was causally related to her work injury, there is no evidence in the record that would support a finding that Claimant is not fully recovered from the work-related "tear of [her] medial meniscus of the right knee superimposed on preexisting degenerative disease." (FOF ¶ 2; Remand FOF ¶ 8.) Accordingly, Employer has met its burden of proving its entitlement to a termination of Claimant's benefits for her adjudicated work injury.

## III. Conclusion

For the foregoing reasons, we reverse the Board's Order affirming the denial of Employer's Termination Petition.

---

**RENÉE COHN JUBELIRER,** Judge

Judge Fizzano Cannon did not participate in this matter.

21

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Raymour & Flanigan,            :

           Petitioner       :

           :

           v.              :     No. 639 C.D. 2018

           :

Workers' Compensation Appeal    :

Board (Houston),             :

           Respondent    :

# O R D E R

**NOW**, July 1, 2019, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is **REVERSED**.

_____

**RENÉE COHN JUBELIRER,** Judge