IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Amanda Bailey,                              :
        Petitioner                    :
                                      :
        v.                            :   No. 170 C.D. 2022
                                      :
Pyramid Health Holdings, LLC                :   Submitted: May 7, 2024
(Workers' Compensation                      :
Appeal Board),                              :
        Respondent                    :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE STACY WALLACE, Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH              FILED: June 5, 2024

In this workers' compensation appeal, Petitioner Amanda Bailey (Claimant) petitions for review of the February 1, 2022 order of the Workers' Compensation Appeal Board (Board), which affirmed the August 4, 2021 decision and order of Workers' Compensation Judge Robert Vonada (WCJ). The WCJ granted Claimant's claim petition (Claim Petition) in part, awarding medical benefits for the period between January 31, 2019, and May 2, 2019. The WCJ otherwise denied the Claim Petition and terminated benefits as of November 12, 2019, concluding that Claimant's disability and related medical treatment on and after May 2, 2019, were unrelated to her work injury.

On appeal, Claimant argues that the Board erred in affirming the WCJ's decision, which Claimant contends was neither reasoned under Section 422(a) of the Workers' Compensation Act (Act),[1] 77 P.S. § 834, nor supported by substantial

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

evidence in the record. Respondent Pyramid Health Holdings, LLC (Employer) contends the WCJ's decision was both reasoned and supported by substantial evidence. Upon review, we affirm.

## I.     FACTS AND PROCEDURAL POSTURE

Claimant filed the Claim Petition on July 23, 2019, alleging that, on January 31, 2019, she sustained a lower back injury described as "lower back, pinched nerve, back surgery." (Reproduced Record (R.R.) at 008a.)   Claimant requested temporary total disability benefits beginning May 2, 2019, together with medical benefits and counsel fees. *Id.* at 010a-11a.  Employer filed an Answer denying that Claimant was entitled to benefits.  Employer alleged that, although Claimant had stopped working as of May 2, 2019, she had not stopped working because of her work injury. *Id.* at 016a. The Claim Petition was assigned to the WCJ, who held a hearing over the course of several days.

Claimant testified that she formerly was employed as a direct care worker for Employer, which position involved helping individuals with disabilities to cook, clean, and bathe.  On January 31, 2019, while Claimant was helping an individual out of the shower and back into his wheelchair, the wheelchair caught on a lip between the shower and the floor.  Both the individual and the wheelchair fell on Claimant.  After some struggle, Claimant was able to return the individual, who weighed approximately 250 pounds, to the wheelchair.  Claimant reported the incident to the on-call nurse, but did not report that she had been injured because she did not feel that she was injured at that time.

Approximately one week before the end of February 2019, Claimant was experiencing constant leg cramps, numbness, and tingling in her left leg from her hip to her toes, and low back pain and stiffness.  Claimant at times was immobile and had

spasms on her left side. On March 6, 2019, Claimant reported the injury to her manager during a staff meeting and advised that she was going to file for workers' compensation benefits because her physical condition was preventing her from doing her job. Claimant described her physical conditions to several of her coworkers.

After Claimant reported the work injury, Employer sent Claimant to a walk-in clinic, which was the first medical provider she saw following the January 31, 2019 incident. There she was given Prednisone packs and advised to treat with her family physician. Claimant's family physician prescribed Gabapentin and Flexeril and ordered a Magnetic Resonance Image (MRI) and x-ray. The MRI was performed on Claimant's back and left knee. Claimant also underwent a course of physical therapy, which was unsuccessful, and thereafter she was referred to Gregory M. Bailey, D.O. (Dr. Bailey), an orthopedic spine surgeon. Dr. Bailey performed a spinal fusion on July 10, 2019. The surgery reduced Claimant's symptoms, but she continued to have numbness and tingling. Claimant testified that, prior to January 31, 2019, she experienced leg pain due to knee osteoarthritis, but did not have back pain or back problems.

Claimant presented Dr. Bailey's deposition testimony taken on November 19, 2020. Dr. Bailey is a board-certified orthopedic surgeon concentrating in degenerative cervical and lumbar spine ailments. Dr. Bailey first saw Claimant on June 12, 2019. The notes from Dr. Bailey's assistant indicate that Claimant told Dr. Bailey that she had injured herself at work on January 31, 2019, at which time she felt a popping sensation in her back with pain extending down her leg. Claimant stated that the symptoms from the incident increased over the next two weeks, after which she developed radicular pain emanating from the upper buttock down through her leg and foot. Dr. Bailey's notes do not reference Claimant's delay in seeking treatment.

After examining Claimant and reviewing the results of the MRI taken on May 13, 2019, Dr. Bailey noted that the MRI showed degenerative disk disease with retrolisthesis. He also noted a large disk herniation compressing a nerve root. Based on those observations, Dr. Bailey concluded that Claimant had an acute disk herniation that he related to her January 31, 2019 work injury. Dr. Bailey accordingly performed the fusion surgery on July 10, 2019. After a November 8, 2019 MRI indicated a new disk compression, Dr. Bailey performed a second fusion surgery on December 12, 2019.

Regarding Claimant's degenerative condition, Dr. Bailey noted that the scope and size of the original disc herniation on the May 13, 2019 MRI would render someone fairly incapacitated and evidenced an acute-on-chronic phenomenon. Dr. Bailey could not relate the second disk herniation to the January 31, 2019 injury with a reasonable degree of medical certainty. Dr. Bailey also noted that Claimant did not report to him at her initial appointment that she had complained of and received treatment for back pain and related problems prior to her January 31, 2019 work injury.

Employer presented the deposition testimony of Thomas Steven Muzzonigro, M.D. (Dr. Muzzonigro), who is a board-certified orthopedic surgeon with an area of special surgical interest in the hip and knee. He performed an independent medical evaluation (IME) of Claimant on November 12, 2019, at which Claimant reported the January 31, 2019 work injury and indicated that, although her back was hurting a little the day of the injury, the pain did not become severe until two to three weeks later. Dr. Muzzonigro reviewed Claimant's medical records from the walk-in clinic and her visits with Dr. Bailey. At the time of the IME, Claimant reported a preexisting knee injury and treatment, but denied any preexisting problems with, or treatment for, her back.

4

Dr. Muzzonigro received additional medical records after his IME indicating that Claimant had complained of, and received treatment for, bilateral paresthesia prior to her work injury. The records indicated that Claimant had been prescribed Cyclobenzaprine and ibuprofen and epidural steroid injections, which treatment Dr. Muzzonigro indicated was inconsistent with Claimant's report to him. Dr. Muzzonigro testified that, after reviewing Claimant's history and all of the medical records, it was his opinion that Claimant had sustained a lumbosacral sprain/strain and contusion on January 31, 2019, from which Claimant was fully recovered as of November 12, 2019. Dr. Muzzonigro further testified that Claimant's fusion surgeries with Dr. Bailey were unrelated to her work injury.

Employer also presented the testimony of Alicia Crotsley, who is Claimant's former coworker who worked with her at the time of her injury. Crotsley testified that, although Claimant mentioned that her back hurt and that she could not keep up with her regular job duties, Crotsley did not recall Claimant mentioning that her injury occurred at work.

In his decision, the WCJ made extensive findings of fact, which included the following relevant credibility determinations:

> 54. [ ] Claimant's testimony is not credible. [ ] Claimant denied prior treatment to her low back in her testimony and to both physicians who testified. The records show she had prior back treatment that rose to the level of prescription medications and epidural injections. She had prior complaints of bilateral paresthesia in her legs. Consistent with [] Claimant's attempt to conceal her prior low[ ]back treatment, I do not find credible [] Claimant's testimony relating her severe symptoms in mid[-]to[-]late February to the January 31, 2019 incident.
>
> I accept that the incident occurred, but I note the history taken by Dr. Bailey's physician's assistant that [] Claimant heard a pop and had immediate pain on the date of

injury was inconsistent with her testimony. As Dr. Bailey explained, the symptoms [] Claimant first complained of in mid[-]to[-]late February are consistent with the MRI finding of a disk herniation as is the history of a pop and immediate pain. Dr. Bailey did not have a history of the delay in the onset of these symptoms. He also did not have the history of [] Claimant's prior complaints and treatment.

55. The findings and opinions of Dr. Muzzonigro are more credible than the findings and opinions of Dr. Bailey. Dr. Bailey did not have an accurate history as set forth above. Accordingly, the opinion of Dr. Muzzonigro is more credible that [ ] Claimant had a lumbar strain and contusion with aggravation of her preexisting radiculopathy on January 31, 2019, but Dr. Bailey's surgery was unrelated to the incident at work. Dr. Muzzonigro's opinion that [ ] Claimant was fully recovered from the January 31, 2019 injury as of the date of his examination was also well reasoned and credible in light of [ ] Claimant's intervening new diagnosis and treatment.

(WCJ Findings of Fact (FOF) 54, 55.) Based on these findings, the WCJ concluded:

[ ] Claimant has met her burden to establish . . . that she sustained a work injury on January 31, 2019 in the nature of a lumbar strain and contusion with aggravation of a pre-existing radiculopathy. However, [ ] Claimant has not met her burden to establish . . . that her disability beginning May 2, 2019 is related to that injury. The disability beginning May 2, 2019 is associated with the condition for which Dr. Bailey performed surgery on two occasions. According to the credible testimony of Dr. Muzzonigro, this condition is unrelated to the January 31, 2019 work injury. Accordingly, [ ] Claimant's Claim Petition should be granted only to award payment for medical treatment between the date of the injury and the alleged date of disability of May 2, 2019.

(WCJ Conclusions of Law (COL) 1.) The WCJ accordingly granted the Claim Petition, in part, and awarded medical benefits for Claimant's work injury for the period

6

between January 31, 2019 and May 2, 2019. The WCJ denied the Claim Petition with regard to any medical or indemnity benefits on or after May 2, 2019.

Claimant appealed to the Board, arguing that the WCJ's findings regarding Claimant's credibility and the credibility of the medical experts were not supported by substantial evidence and that the WCJ's decision was not well reasoned. (R.R. at 031a.)[2] The Board affirmed, concluding that the WCJ's credibility determinations were adequately reasoned. It further concluded that the WCJ's finding that Claimant's disability beginning May 2, 2019, was not causally related to her work injury was supported by substantial evidence.

Claimant now appeals to this Court.

## II.    QUESTIONS PRESENTED[3]

Claimant presents three questions for our review: (1) whether the Board erred in concluding that the WCJ made a reasoned decision in finding portions of Claimant's testimony to be not credible; (2) whether the Board erred in concluding that the WCJ made a reasoned decision in concluding that Dr. Muzzonigro's testimony was more credible than Dr. Bailey's testimony; and (3) whether the Board erred in concluding that the WCJ's determination that Claimant's disability and treatment from May 2, 2019, onward were not related to her work injury was supported by substantial evidence.

---

[2] Specifically, Claimant challenged findings of fact 54 and 55, which are the credibility determinations regarding Claimant's testimony and that of Drs. Bailey and Muzzonigro. (FOF 54, 55.) Claimant also challenged conclusion of law 1.

[3] Our review in workers' compensation appeals "is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Columbia County Commissioners v. Rospendowski (Workers' Compensation Appeal Board)*, 286 A.3d 436, (Pa. Cmwlth. 2022) (quoting *Elberson v. Workers' Compensation Appeal Board (Elwyn, Inc.)*, 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007)).

## III. DISCUSSION

### A. Credibility Determinations

Claimant's first two issues involve the WCJ's credibility determinations and whether they are sufficiently "reasoned" under Section 422(a) of the Act. Section 422(a) provides, in pertinent part, as follows:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The [WCJ] shall specify the evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the [WCJ] must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. § 834. To satisfy the general reasoned decision requirement, a

> WCJ must set forth the rationale for the decision by specifying the evidence relied upon and reasons for accepting it. In the face of conflicting evidence, the WCJ "must adequately explain the reasons for rejecting or discrediting competent evidence." 77 P.S. § 834. Section 422(a) does not require the WCJ to discuss all of the evidence presented[,] but only to make the findings necessary to resolve the issues raised by the evidence and relevant to the decision. The purpose of a reasoned decision is to spare the reviewing court from having to imagine why the WCJ believed one witness over another and to permit adequate appellate review.

*Department of Corrections-SCI Chester v. Faison (Workers' Compensation Appeal Board)*, 266 A.3d 714, 736-37 (Pa. Cmwlth. 2021) (most internal citations, quotations, and bracketing removed).

Specifically regarding whether a WCJ's credibility determinations are adequately "reasoned" under Section 422(a), we have explained:

> Although our Supreme Court has held that a WCJ need not explain credibility determinations relating to a witness who testifies before the WCJ, [*see Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1052-53 (Pa. 2003),] Section 422(a) of the Act requires some explanation of credibility determinations by a WCJ with regard to conflicting deposition testimony in order to enable this Court to review a WCJ's decision. Under Section 422(a) of the Act, a WCJ must articulate the objective rationale underlying his credibility determinations where the testimony of such witnesses is conflicting. A WCJ may satisfy the reasoned decision requirement if he summarizes the witnesses' testimony and adequately explains his credibility determinations. Thus, while summaries of testimony alone would be insufficient to satisfy the reasoned decision requirement, where a WCJ summarizes testimony and also objectively explains his credibility determinations, the decision will satisfy the requirement. Further, other evidence in the record may provide the objective support necessary under Section 422(a) of the Act for adequate credibility determinations.

*Amandeo v. Workers' Compensation Appeal Board (Conagra Foods),* 37 A.3d 72, 76 (Pa. Cmwlth. 2012) (internal citations and quotations omitted). Other circumstances providing "objective support" for a reasoned decision would include, but not necessarily be limited to

> an expert witness's opinion may be based upon erroneous factual assumptions; or an expert may have had less interaction with the subject; or the interaction was in a less timely fashion; or the expert may betray a bias or interest in

9

the matter[;] an expert witness may be unqualified or less qualified than the opposing party's expert; or may be impeached with inconsistencies or contradictions in his or her testimony or reports; or may be impeached in some other convincing fashion.

*Daniels*, 828 A.2d at 1053 (citations omitted).

Finally, and importantly here, we have often emphasized that Section 422(a) of the Act does not permit a party to question or second-guess the substance of a WCJ's reasons for credibility determinations. *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Co.)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006); *Kasper v. Workers' Compensation Appeal Board (Perloff Brothers, Inc.)*, 769 A.2d 1242, 1244 (Pa. Cmwlth. 2001). We expressly have declined a claimant's invitation to scrutinize each of the WCJ's reasons for his credibility determinations, explaining that

[d]eciding credibility is the quintessential function of the fact-finder, particularly one who sees and hears the testimony. It is not an exact science, and the ultimate conclusion comprises far more than a tally sheet of its various components. We will not take the statutory mandate that a WCJ explain reasons for discrediting evidence as a license to undermine the exercise of this critical function by second guessing one or more of its constituent parts.

*Kasper*, 769 A.2d at 1244 (footnote omitted). Thus, unless made arbitrarily or capriciously, a WCJ's credibility determinations will not be disturbed on appeal. *Empire Steel Castings, Inc. v. Workers' Compensation Appeal Board (Cruceta)*, 749 A.2d 1021, 1027 (Pa. Cmwlth. 2000); *PEC Contracting Engineers v. Workers' Compensation Appeal Board (Hutchinson)*, 717 A.2d 1086, 1089 (Pa. Cmwlth. 1998). A WCJ acts capriciously when he or she deliberately ignores relevant, competent evidence, or, in other words, deliberately or baselessly disregards apparently trustworthy evidence. *Faison*, 266 A.3d at 736. *See also Casne v. Workers'*

10

*Compensation Appeal Board (STAT Couriers, Inc., and State Workers' Insurance Fund)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008) (even where a WCJ makes credibility determinations on a cold record, this Court affords substantial deference and will overturn those determinations only where they are arbitrary and capricious "or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render [the WCJ's decision] irrational").

### 1. Claimant's Testimony

Claimant first argues that the Board erred in affirming the WCJ's determination that Claimant's testimony was not credible. Claimant contends that the WCJ should not have found her testimony to be not credible based on her concealment of her preexisting back problems and treatment. Although Claimant does not deny that she failed to mention her prior back issues to both Drs. Bailey and Muzzonigro, she nevertheless argues that the omissions were innocent and that both doctors in any event knew about her degenerative condition. Claimant accordingly argues that her testimony should not be "controlling" on the issue of whether her disability is related to her work injury. (Claimant's Br. at 10-12.)

First, Claimant misapprehends the nature of the WCJ's determination regarding her credibility. The WCJ found that, because Claimant omitted informing both doctors and the WCJ about her preexisting back conditions and treatment, her testimony relating her severe symptoms to her work injury was not credible. The WCJ did not consider Claimant's testimony to be "controlling" on any question. He instead discounted Claimant's testimony to the extent that it supported the notion that her severe symptoms, appearing weeks after her work injury, were causally related to it. The WCJ noted that Claimant's failure to mention her prior conditions and treatment to Dr. Bailey and her inconsistency in reporting when the severe symptoms first began

negatively impacted the credibility of Dr. Bailey's opinions, which were not based on an accurate set of facts. Thus, contrary to Claimant's assertions, the WCJ did not deem Claimant's testimony to be "controlling as to the diagnosis of her work injury, resulting disability, and credibility [of] the medical testimony of Dr. Bailey." *Id.* at 12. Rather, the WCJ found Claimant's testimony regarding the onset and timing of her severe symptoms to be at least inaccurate, if not deceitful, and therefore not credible either in its own right or to support the medical opinions of Dr. Bailey.

Second, and controllingly, we interpret Claimant's argument as an invitation to reevaluate and "second-guess" the WCJ's credibility determination, which we may not do. A WCJ need only explain the rationale used for discrediting otherwise competent, relevant evidence to a degree that permits a court to conduct meaningful appellate review without having to "imagine" the WCJ's reasoning. Regarding live witnesses such as Claimant, a WCJ may rely exclusively on the witness's demeanor to justify a credibility finding. The WCJ went much further here to explain both the perceived deceitfulness, or at least neglectfulness, in Claimant's testimony and disclosures to the medical experts and how Claimant's testimony contradicted medical records. The WCJ's determinations are reasoned and supported by the record, and we will not disturb them on appeal. Claimant's request that we do so is without merit.

### 2. Medical Testimony

Claimant next argues that the Board erred in affirming the WCJ's credibility determinations regarding the conflicting medical testimony offered by Drs. Bailey and Muzzonigro. Specifically, although Claimant expressly concedes that Dr. Muzzonigro's opinions were competent, she nevertheless contends that the WCJ "erred in giving more weight to his testimony than the testimony of [ ] Dr. Bailey, leading to an unreasonable decision." (Claimant's Br. at 12.) Claimant argues that, because Dr.

12

Bailey was Claimant's treating physician and specializes in spinal surgery, the WCJ erred in attributing more weight to the opinions of Dr. Muzzonigro, a general orthopedic surgeon who saw Claimant on only a single occasion to conduct an IME. *Id.* Claimant contends that because a treating physician's opinion *may* be given greater weight than that of a medical expert retained for litigation, Dr. Bailey's opinions were *entitled* to greater weight in this instance. Claimant's arguments are without merit in several respects.

First, although Claimant purports to argue that the WCJ's decision is unreasoned with regard to the medical testimony, the challenge in reality is directed at the weight the WCJ gave to the substance of the medical opinions. We will not disturb such determinations on appeal unless the WCJ's decision is arbitrary and capricious, *i.e.*, the WCJ has deliberately ignored relevant, competent evidence or has rendered an irrational decision based on a fundamental misapprehension of the facts. *Faison*, 266 A.3d at 736; *Casne*, 962 A.2d at 19. Claimant does not argue that the WCJ's findings are arbitrary and capricious; nor could she. The WCJ thoroughly analyzed both doctors' credentials and the medical records and patient histories upon which they relied in rendering their opinions. It is clear from his findings that the WCJ had a thorough understanding of the medical issues presented in this case and identified relevant differences in the facts relied upon by the doctors to give appropriate weight to their opinions. And, plainly, merely because a WCJ *may* lend more weight to the opinion of a treating physician does not mean that he *must* do so. We find nothing arbitrary or capricious in the WCJ's credibility and weight determinations.

Second, to the extent that Claimant does in fact assert that the WCJ's credibility determinations concerning the medical testimony are unreasoned, we disagree. Because each expert's testimony was submitted via their respective

13

depositions, the WCJ was required to, at least, summarize the pertinent testimony and objectively explain his associated credibility determinations, providing additional objective support from the record, if available. *Amandeo*, 37 A.3d at 76. The WCJ explained that he found Dr. Muzzonigro more credible than Dr. Bailey in certain respects because Dr. Bailey did not have a completely accurate medical history from Claimant. Claimant did not inform Dr. Bailey of the delay in the onset of her symptoms and did not provide any information regarding her prior back problems and treatment. Further, Dr. Muzzonigro reviewed additional medical records detailing Claimant's prior treatment that Dr. Bailey did not review. Based on these facts, the WCJ credited Dr. Muzzonigro's opinion over that of Dr. Bailey regarding whether Claimant's work injury, and not another acute event occurring later, caused Claimant's disability. We, like the Board, find the WCJ's explanation of his credibility determinations in this regard to be adequately reasoned. We therefore will not disturb them.

## B.     **Substantial Evidence**

Claimant lastly argues that the WCJ's decision was not based on substantial evidence chiefly because his credibility determinations regarding Claimant's and the doctors' testimony were not reasoned. Because we have concluded that the WCJ's determinations are reasoned, we reject that argument. Claimant does not otherwise challenge the evidence supporting the WCJ's decision except for a single conclusory assertion that the WCJ "improperly considered [Claimant's] pre-injury condition in ignoring the context of the entire medical record and medical testimony." (Claimant's Br. at 15.)   Not only is that argument fatally undeveloped, but it also is meritless as far as it goes. The WCJ thoroughly considered the entire record and, as we have discussed, made reasoned credibility determinations regarding why the testimony of Claimant and her medical expert were not persuasive. The WCJ

14

legitimately considered the facts that Claimant did not disclose her pre-injury back condition throughout the proceedings below and that Dr. Bailey did not review the medical records associated with that condition in making his findings. Those findings are based on substantial evidence in the record and, accordingly, are valid and binding on appeal.

In sum, because none of Claimant's issues on appeal have merit, we affirm the Board.

_____
PATRICIA A. McCULLOUGH, Judge

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Amanda Bailey, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 170 C.D. 2022 |
| | : | |
| Pyramid Health Holdings, LLC | : | |
| (Workers' Compensation | : | |
| Appeal Board), | : | |
| Respondent | : | |

## ***ORDER***

AND NOW, this 5th day of June, 2024, it is ORDERED that the February 1, 2022 order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge